*579 OPINION of the Court, by
Judge Boyle.
-Morgan, being desirous of building a water grist mill at the fails of Salt river, and owning the land on both sides of the stream, applied tp the county court of Mercer, for a writ of ad quod dcs/pmum, as the law in such case directs. On the return of the inquisition taken by virtue of the writ of ad quod damnum, Morgan obtained an order that a. summons should issue against Banta and others, the now appellees, to appear and shew cause, if any they could, why he should not have leave to build a mill, at the place proposed. They appeared, and contested the propriety of granting leave to build the mill in question, which was accordingly refused by the court, and judgment awarded in their favor against Morgan, for the costs they in that behalf had expended ; whereupon Morgan took an appeal to this court.
In questions of this sort, both the law and the fact are to be enquired into by this court, and we have, as we deemed i: our duty to do, permitted either party to shew by evidence dehors the inquisition taken by virtue of tne writ of ad quod damnum, any fact tending to *580 demonstrate the propriety or impropriety, of building' the mill in question.
Twenty years pofleiTion bars right of entry, &c. and gives right to repel every wrongful invalion of the poiTeffion.
Had it appeared from the inquisition or other evidence, that by the erection of the proposed mill, the mansion house of any proprietor, or the offices, curtilage or garden thereunto immediately belonging, or orchards, would be overflowed, or the health of the neighborhood annoyed, the law peremptorily interdicting leave to build a mill where such would be the effect, it would be needless to proceed farther in this enquiry. But such not appearing to be the case, the law leaves it in the discretion of the court whether, all circumstances weighed, leave to erect the mill ought to be granted.
To the erection of the mill, the appellees object in the first place, that the public good does not require it, there being already a sufficient number of mills in the vicinity, for public use. In point of fact, this objection appears to be clearly established. For though in this respect there was some apparent contrariety in the testimony, the weight of the evidence was decisively on the side of the objection. No witness asserted, that for the ordinary purposes of domestic ard country use, the public demand was not abundantly supplied by the mills already erected in the neighborhood of the site of the proposed mill; and as to a scarcity of merchant mills, the idea was contradicted by a great majority of the witnesses, as well as by the inference dcducible from the number and situation of nulls ef that description, in that part of the country. We can have no hesitation in saying, that the clear result from the whole evidence, was, that the public convenience does not require the erection of the mill in question. But it may well be questioned, whether, in the absence of all other causes of objection, it would be a sufficient ground to oppose the erection ot a new mill, that public convenience did not require it; an unnecessary multiplication of mills beyond the public demand, might, by diminishing their profits, render the owners less able to keep them in proper repair for public service. This however is an evil, which it is believed would rarely, if ever occur, and when it did, would soon produce its own cure. No man will continue long in a course of business, which it is not his interest to pursue. If he finds less profit in expending his money in keeping a mill in repair, *581 than he would in employing it some other way, he will permit his mill to go into disuse and decay ; and in this way, will the number of mills, when too great, be reduced, until there shall be no more than sufficient to meet the public demand, and afford a profit that will justify the owners in keeping them in repair.
But it is in the second place objected by the appel-lees, that the erection of the mill and dam in question, would obstruct the public road from Harrodsburg to Springfield. The road crosses Salt river, some distance above the site of the proposed mill, and the various results of the different experiments made to ascertain the quantity of fall or descent in the river, from one place to the other, leave it doubtful, whether the erection of the mill and dam would have the effect of obstructing the road. A doubt however, whether in this respect it would be prejudicial to the public, when combined with the consideration that the public convenience does not demand the building of the mill, would appear to furnish a conclusive reason against its erection. To obviate this objection, Morgan proposed to the county court, and repeated the proposition in this court, to take leave to erect a dam eight feet high, and if that height should prove prejudicial, that he would reduce it so as not to prejudice the road, or submit to the condition of erecting a bridge over the river, and keeping up the same, so as to afford a convenient passage to travellers and carriages of every description. But it is a sufficient answer to this proposition, that it would be requiring conditions of Morgan, which the law does not autho-rise the court to impose, and a compliance with which could not be enforced.
A third objection taken by the appellees, to the erection of the mill in question, is, the private injury that it would do to them, by overflowing the springs of Green and Banta.
The overflowing of a spring not be'mg amongst the causes for which the law imperatively interdicts leave to build a mill, we have no doubt that if the public good required it, leave to erect the mill in such a case might be granted, upon the applicant making compensation for the private injury. But we have as little doubt, that where the public good is not concerned, a private injury qf that sort is an insuperable objection to the erection *582 ofthe mill. The law holds the property of every os© equally sacred, and no reason can be assigned, why the rights of one citizen should be made to yield to those of another. To require it, would be a direct violation of the maxims of social justice, the rule in such case being te sic utere tuo ut alienum non ¡cedas.”
As to Green’s spring, it being on the river, not far from where the road from Harrodsburg to Springfield crosses, and nearly on a level with it, the same doubt occurs as is mentioned with respect to the road, whether it would be overflowed or not i but it would seem clear that the court ought not to authorise an act to be done for the mere private benefit of one individual, which would jeopardise the rights of another.
As to Banta’s spring, it is admitted on all hands, that it would be so inundated by the erection of the mill in question, as to render it perfectly useless. But in answer to the objection on this ground, Banta’s right to the spring was denied. We do not think that the case requires a decision of the question made on the trial, as to the true boundaries of the deed under which Banta holds.
The uninterrupted use and' possession of the spring for twenty years, which Banta and those under whom, he claims were proven to have enjoyed, give him an unquestionable right (a), to repel every wrongful invasion of his possession. Had Morgan the absolute property in the spring, he would be barred of his right of entry upon it, by an adverse possession for such a length of time; and would be considered as a trespasser, if he should invade the possession of Banta, But Morgan pretends no claim to the spring, and can have no right to question the validity of the title under which Banta possesses and enjoys it. The value of the spring cart make no difference as to Banta’s right to enjoy it, free from molestation and annoyance. It may however be remarked, that it is the only spring used by him for family use, and is in general sufficient to supply his demand.
Upon the whole we are of opinion, thatthe order of the county court, in refusing to grant leave to build tftQ mill in question, is correct. — —J udgment affirmed.

 Bull, N. P. 103 — Salk. 421, Stokes vs. Berry.