## Trabue *vs* Macklin.

APPEAL FROM THE FRANKLIN COUNTY COURT.

*Mills. Writs of ad quod damnum.*

JUDGE MARSHALL delivered the opinion of the Court.

MACKLIN having become the proprietor of the land on both sides of the South fork of Elkhorn, and also of the bed of the stream where a mill dam had been erected by Bennet Pemberton, in 1799, but had been washed away, without any attempt to rebuild it for several years, and being also the proprietor of the land where the mill house formerly stood, at some distance below, the County Court of Franklin, on his application to erect a dam of nine

MILL CASE.

*Case* 83.

*April* 19.
The case stated.

feet where Pemberton had erected his dam, issued a writ of *ad quod damnum,* on which an inquest was returned favorable to the erection of the dam as proposed, "where the old dam erected by Pemberton stood, viz: about 30 poles above the mouth of the South fork." On the return of the writ Stephen F. J. Trabue, whose farm lies on the south side of the creek, a few hundred yards above the proposed dam, opposed the granting of the privilege. And the County Court having granted leave to build a dam "nine feet high, agreeably to the inquisition," Trabue has brought the case to this Court by appeal, and it has been tried upon errors of fact as well as of law.

With regard to the form of the proceeding and the finding of the jury, we are of opinion that they are in substantial conformity with the law, and authorized the leave granted, if the inquest were, in all respects, supported by the evidence, as we presume it was, in the County Court. But many witnesses having been examined in this Court, we are bound to decide the case upon the evidence before us. Upon that evidence we are of opinion that the erection of a dam and mill at the proposed places, though not absolutely necessary to the convenience of the neighborhood, in which there are already several mills, will, from the great fall and the water power which may be obtained, and which will probably carry the mill, with effect, during the whole year, greatly promote the convenience and advantage, not only of the immediate neighborhood, but also of a considerable section of adjacent country. We are satisfied, therefore, that an efficient mill at the place proposed, will be an object of public utility, and that the erection of such a one is desirable. We are also satisfied that a dam may be erected at or about the place named in this order, of such a height as will render the mill more than ordinarily efficient, without producing any of those inconveniences, against which the statute expressly provides, or any other injury of a public or private nature, which should prevent its erection. But we cannot say that this would be the case in regard to a dam of nine feet, erected precisely on the site of the original dam built by Pemberton. On the contrary, we cannot avoid the conviction that such a

dam would overflow a valuable spring on the farm of Trabue, and the principal one used by his family, to an uncertain but probably a considerable depth. It would also overflow some indefinite portion of his land. And as, upon grounds presently to be stated, it may be inferred that neither the inquest nor the order of the County Court was based upon evidence which referred certainly to the effects of such a dam, and as there is no such evidence before us, there is not, and has not been, in any part of the proceeding, a sufficient basis for determining whether such a dam would or would not annoy the health of the neighborhood, or produce some of the other inconveniences enumerated by the statute, and the existence of which would be an insuperable obstacle to the grant of the desired privilege.

The inquest should show whether the health of the neighborhood would be affected by the proposed mill dam.

It appears that the dam was originally built by Pemberton, under leave to erect a dam of five feet in height; that about the year 1810 or 1812, it was repaired and raised somewhat higher than before, and that about the year 1818 or 1820, a succeeding proprietor built, for its protection and adjoining it, a false or guard dam, extending six or seven feet down the stream, the top of which was five or six inches higher than that of the upper or real dam. The structure remained in this condition for about twenty years, when it was washed away; and the only remnant of any part of it from which its height can be ascertained, consists of some of the timbers of the guard dam, indicating an elevation at the shore of about nine feet above the bottom of the creek, where the lower side of the guard dam crossed it. It is clearly proved that the old dam did not throw the water upon the spring of Trabue; and upon this fact, together with the ascertained height of the remaining part of the guard dam, as above stated, rests the conclusion asserted in the inquisition, and impliedly assumed in the order of the County Court, that a dam nine feet high, at the place designated, would not overflow nor injure the spring. But there is no evidence of the exact height of the original dam, as built by Pemberton, or as subsequently repaired; and as it may be assumed, from the nature of the thing, as well as from the evidence, that the bed of the

creek is higher where the original dam crossed than it is where the guard dam crossed, it follows that a dam of nine feet at the former place, would raise the water higher than at the latter. Besides, the top of the guard dam was some inches higher than that of the upper dam; and in addition to this, it is now ascertained, by measurement and levels, taken since the case came into this Court, that the top of the remaining timbers of the old dam is from three and a half to six and a half inches above the level of Trabue's spring, which rises or runs out of the bank in the bed of an arm of the creek, commonly dry, and that, consequently, it would be overflowed some inches by a dam of nine feet, erected even on the lower line of the guard dam, and much more by a dam of that elevation erected on the site of the original dam. The testimony of the witnesses, who speak from observation of the effects of the old dam, is reconciled with the facts by supposing what we think must have been the case, that the middle part of the guard dam was depressed so as to permit the water to run over it at a less elevation than nine feet; while the inquest of the jury and the order of the County Court seem to be based upon the assumption, not only that nine feet was the true height of the dam referred to by the witnesses, but that that dam was the same one referred to in the inquest and order as the one erected by Pemberton.

*If the spring of an individual is to be overflowed by the erection of a mill dam, it must appear that public convenience requires it or it will not be sustained.*

But as it is shown by the levels lately taken, that a dam of that height, even on the site of the old guard dam, would overflow the spring, it follows from the principles decided in the case of *Morgan* vs *Banta*, (1 *Bibb*, 581,) that even if the order of the County Court had restricted the proposed dam to that position, it would have been erroneous; and as it certainly authorizes its erection on the precise site of the original dam, (if indeed it does not restrict it to that position,) it is still more clearly so.

*Can the Court of Appeals, in revising a decision of the County Court, establishing a mill dam, reduce the height of the proposed*

The applicant has indeed avowed in this Court, that it was his intention to build the dam below the site of the original dam, and that he is willing to be restricted to the height of eight feet six inches. But waiving the question on which we have some doubt, whether the order of the County Court, if reversed at all, for error in fact, must

not be reversed *in toto*, and whether this Court can, upon evidence introduced here for the first time, or upon its own inference from the facts, and without a new proceeding by writ of *ad quod damnum*, direct a modification of the order, either as to the height of the dam or the place of its erection, we are not satisfied that a dam even of eight feet six inches elevation, measured at the lower side of the old guard dam, would not throw the water back upon Trabue's spring, and seriously injure it. And as this is not a case of public necessity, which justifies, so far as now appears, a serious injury to the spring of Trabue, even upon the terms of making compensation, as indeed the advantage to be derived from the proposed mill will be amply secured by the erection of a dam which will not elevate the water of the creek above the spring; and as there is, therefore, no reasonable motive for even hazarding the infliction of that injury, we are of opinion that a doubt, of which, upon consideration of all the facts, we cannot divest ourselves upon this question, whether the dam, even at the lower elevation now proposed, would not raise the water higher than the spring, and thus overflow it, is, as was determined in the case of *Morgan* vs *Banta*, sufficient ground for not acceding to the proposition now made. The applicant may easily ascertain the precise height and position of a dam which, while it will answer his purposes and those of the public, will not injure the spring of Trabue, by throwing the water, when it rises so as to run over the dam, back upon the spring, and this he may easily make manifest to a jury of inquest and to the Court. An application for such a dam, shown to be uninjurious to the spring of Trabue, and not to be within the interdict of the statute in other respects, would probably be successful. In view, therefore, of the uncertainty now existing in the case, and of the regard which the law pays to the rights which may be affected by the erection of a dam, we deem it the more prudent course not to act upon the proposition made in this Court, but by a simple reversal of the order, to remit the party to his right of proceeding *de novo* in the County Court.

TRABUE
*vs*
MACKLIN.

dam, and confirm the lease in any case?— *Que.* —It will not be done where there is still doubt whether the spring of complaining party will be overflowed, but leave the party to proceed *de novo* before the County C't.

Wherefore, the order of the County Court, granting leave to erect a dam as above recited, is reversed and set aside, and the cause is remanded.

*Morehead & Reed and Cates & Lindsey* for appellant: *Harlan & Craddock and Robertson* for appellee.

---

CHANCERY.

Case 84.

April 24.

The case stated.