## WALTERS *v.* HOUCK.

Where upon the return of an inquest of a jury summoned under a writ of *ad quod damnum,* on continuing a mill dam, it was objected to the inquest, that after the sheriff had discharged one jury, for the reason that they could not agree, he impannelled another, returning one or more jurors of the former jury ; and where some of the evidence indicated that there had been two inquests, but the sheriff's return did not show the fact, nor did the record, in any other part for manner ; and where the appellant took exceptions to the decision of the court, overruling the motion, which motion was embodied in the bill, but the bill did not certify the fact ; *Held,* That it did not sufficiently appear that the sheriff had acted improperly, in summoning the jury.

In proceedings to take private property for public use, the requirements of the statute must be fully and fairly obeyed.

In cases where it is sought to take private property for public use, there must be a full, intelligent and competent inquiry into the question of the individual loss or damage ; and if the inquisition is executed in a deficient, incompetent or negligent manner, so as to show that the party's exposure to damages, has not been properly inquired into, it does not meet the design of the constitution and the law.

The return to a writ of *ad quod damnum* should set out the specific oath administered to the jury.

*Appeal from the Clarke District Court.*

WEDNESDAY, OCTOBER 20.

An application for a writ of *ad quod damnum* on continuing a mill dam across the middle fork of the Nodaway river, on the north-east quarter of the south-east quarter of section two, in township seventy-two north, range fifty-

five west, in Adams county. The venue was changed from Adams to Clark county, where, at the October term, 1857, the court rendered judgment in favor of the petitioner, granting the license prayed for. The exceptions taken, and all essential matters, appear in the opinion of the court.

*W. W. Williamson* and *Lewis Todhunter*, for the appellant.

No appearance for the appellee.

WOODWARD, J.—Upon the return of the inquest, the appellant made objections thereto, all which were overruled by the court.

One exception taken was, that after the sheriff had discharged one jury, for the reason that they could not agree, he impannelled another, returning one or more jurors of the former jury. This practice would be very objectionable, but it is not made to appear, as a fact. Some of the testimony indicates that there were two inquests, but the sheriff's return does not show the fact, nor does the record in any other part or manner. The respondent took a bill of exceptions to the decision of the court, in overruling his motion to set aside the inquest, for this reason, and the bill embraces the motion, which states the fact, but the bill itself does not certify the fact to be so. The motion was overruled, but the bill does not show whether it was because such was not the case, or for some other reason. This objection, therefore, cannot prevail.

Five errors are assigned, the substance of which is, that the inquisition should have been set aside, in view of the evidence. The particulars assigned under this head are to the effect, that the inquisition was imperfectly and inadequately executed.

It is to be remembered that this is a proceeding to take private property for public use, which is so important as to be guarded by a provision in the constitution; and it is the only process by which the party can obtain compensa-

tion, for any loss or injury coming within the reach of the jury's inquiry. And the rule is well settled, that the statute requirements must be fully and fairly obeyed. This appears from all the cases. And from the nature of the case, and on principle, it is equally clear, that there must be a full, intelligent, and competent inquiry into the question of the individual's loss or damage; and that if the inquisition is executed in a deficient, incompetent, or negligent manner, so as to show that the party's exposure to damages has not been properly inquired into, it does not meet the designs of the constitution and the law.

We will briefly examine this proceeding in view of the foregoing thought. It is as manifest that the covering a party's coal bed, stone quarry, or spring is, or may be, as truly and as greatly a damage to him, as the flowing his grounds. The two former, if not the latter, may be as valuable properties as any other. And cases have occurred in which it was held, that if a party's spring will be destroyed, the license should not be granted, or, at least, should not, unless a strong necessity demands it. *Payne* v. *Taylor*, 3 A. K. Marsh., 328; *Morgan* v. *Banta*, 1 Bibb, 579; *Traber* v. *Macklin*, 4 B. Mun., 407.

Without giving the testimony of witnesses in detail, that of two classes will be noticed in substance, and without distinguishing what is from one, and what from another. From the witnesses, Burgen, Jones, P. R. Lawrence, and J. Lawrence, it appears satisfactorily, that there was a ford below Houck's mill, which was rendered impassable by the back water occasioned by Walters' dam; that Houck's farm, lying on both sides of the river, the distance for him to pass from one part to the other, and to his timber, was increased one mile, or one mile and a half; that there was a coal bed and a stone quarry, which had been worked in some degree; and that they were covered by the back water caused by the same dam. One of the witnesses had worked in the coal bed. Nothing is here intended to be implied, as to the quality or value of either the coal or stone quarry—these being subjects for the jury to inquire

Walters v. Houck.

into. For our present object, the only thing of importance is the fact of their existence. It farther appears that the water flowed back upon the mill of Houck. We abstain from saying that it impeded it, leaving this for the jury, and presenting the facts only. Two of the witnesses were the millwrights, who put up the wheel of respondent's mill. The above witnesses testify, that the back water rose over the wheel and crank of this mill; that on the morning when J. Lawrence testified, he measured and found the water three feet and ten inches above the mud-sill of the mill, whilst, when the water is drawn off, the sill is partly, at least, out of water; and at that time, the water of the river was at an ordinary stage; that it was eleven inches from the top of the shaft to the top of the water; and that the capacity of the mill for work was diminished one-third at least. One of the witnesses had worked it to some extent.

The testimony of the other witnesses is given briefly, to point out, (although they were jurors), their want or knowledge upon the subjects of inquiry—their uncertainty, and the unsatisfactory manner of the investigation. From these—Gillespie, Burgen and Miller—we learn that the jury had no surveyor to assist them, nor any leveling instruments, but that they attempted to level for themselves. One says the water came back to Houck's dam and mill, but he could not tell how high it rose, but says the wheel was not to be seen. One of them says he saw no coal, and could not recollect seeing a stone quarry. He heard them say there was a ford, but he does not know about it. Upon inquiry, as to what information the jury obtained, and how, he tacitly refuses to divulge, so that he leaves it entirely uncertain what the jury inquired into. When he and Gillespie tell us that they did not see a coal bed or a stone quarry, they stop there, and do not say why they did not see them—whether they learned there were none, or whether they were submerged, and therefore not seen— or whether they were wholly passed over, and not made subjects of inquiry. One of them does not recollect

about some of the subjects more than if they had not been subjects of inquiry—and perhaps they were not.

There is an error of date in the testimony of W. Miller, which renders it doubtful what jury of inquest he was upon; but as he was not upon the present one, it is, perhaps, a necessary inference, that he was upon that referred to in the motion of the respondent. Indeed, his testimony is the only thing in the case, save that motion, which indicates that there had been a prior jury. His testimony will not be considered in the case.

As meagre as the testimony is, it seems sufficient to render it manifest, that either some of these subjects were not thought of, and were not made subjects of examination, or else that they received a very slight and inadequate degree of attention. We see from the testimony of the witnesses that there was a ford, which was rendered useless, and that there was a coal bed and stone quarry, which were overflowed; and yet these jurors, sworn to make a faithful examination, according to the best of their skill and judgment, into the damages about to be sustained by the landholder, know nothing about these things, which are of a possible importance, second to no other property, not excepting the mill. They have no recollection of them—they have no information to communicate relative to the inquiry concerning them. They do not know whether such things existed. And even in regard to the mill of respondent, they have but little knowledge.

The overflow of agricultural land, and the consequent damage, is not the only matter to be looked at in the execution of this writ. Other property may be of equal value. The flooding a coal bed, or a stone quarry, may be as great a damage and loss; the loss of a spring may be as serious a detriment; and the destruction of a ford may be as great an inconvenience, in causing to the owner the increase of a mile or more, in passing from one part to another of his land. These things appear not to have been known to, or to have been overlooked or disregarded by, the jury. If, indeed, they intended to say that the owner was entitled

to nothing for these things, and the effect on his mill, it should, at least, clearly appear that they took them into careful consideration. On the contrary, the conclusion seems almost irresistable, that the inquisition was conducted in a careless, negligent, and unintelligent manner, and ought therefore to be set aside.

It is not intended to express any opinion respecting the right to erect respondent's mill, for no question is made upon this, but only to say, that if the right is not questioned, then the injury to it should be considered.

Another error assigned is, that the jury was not sworn as required by the statute. The sheriff returns that they were sworn according to law, but does not set forth the oath which was administered. The officer should return the oath specifically, but under the present determination of the preceding assignment, it is unnecessary to consider whether this omission is fatal.

The finding of the jury is set aside, and the order of the court thereupon is reversed, and the cause is remanded for further proceedings consistent with this opinion.