WILLOUGHBY *et al.*, Defendants in Error, v. SHIPMAN, Plaintiff in Error.

1. The court ought not, in proceedings instituted under the act concerning mills and mill-dams, to give permission to erect, or increase the altitude of, a dam, if it appear that the mansion-house of any proprietor or other out-houses, curtilages or gardens thereto belonging, or orchard, will be over-flowed, or that the health of the neighborhood will be materially affected.
2. A spring-house is an out-house within the meaning of the eighteenth section of said act.

*Error to Newton Circuit Court.*

*E. B. Ewing*, (attorney general,) for plaintiff in error.

I. The court erred in "striking out" the issues which had been directed and refusing to order them anew upon defendant's motion. The objections filed upon the return of the inquest, showed good cause for quashing the proceedings and setting aside the verdict. (R. C. 1845, p. 745, § 14 & 15; Payne v. Taylor, 3 A. K. Marsh. 1168; 1 Bibb, 578; 4 Ben. Monr. 410; 7 id. 450.)

*Edwards* and *Ewing*, for defendants in error.

I. There is no error in the striking out the issues submitted to the jury. They were improperly submitted by the court and should have been struck out on motion. If the plaintiff in error is damaged he has ample remedy against the defendants by his action at law under the limitations of the twenty-third section of said act. (R. C. 1845, p. 747.)

RICHARDSON, Judge, delivered the opinion of the court.

The objections filed by the plaintiff in error to the inquest of the jury furnished manifest reasons for framing issues to be tried under the direction of the court; and, if the objections are warranted by the facts, it would be a gross wrong to the plaintiff to impair the value of his property without compensating him with ample damages.

By the first section of the act concerning mills and mill-dams it was the duty of the jury to inquire, 1st, what damage such proprietor would sustain by reason of inundation consequent upon the raising of the dam; 2d, whether the mansion-house of any proprietor, or the out-houses, curtilages or gardens thereto immediately belonging, or orchard, would be overflowed thereby; 3d, whether ordinary-navigation and fish of passage would be obstructed; and, 4th, whether the health of the neighborhood would be materially damaged. The inquest returned by the sheriff stated, 1st, that Shipman would be damaged by inundation consequent on raising the dam $87.12½; 2d, that the mansion-house, out-houses, curtilages, gardens or orchards of no proprietor would be overflowed; 3d, that ordinary navigation and fish of passage would not be obstructed; and, 4th, that the health of the neighborhood would not be materially damaged by raising the dam to the height desired." On the return of the inquisition Shipman filed objections to it, stating that the proposed increase in the height of the dam would seriously affect the health of his residence, would cause the overflow of his spring-house, and destroy the only spring on his place. Thereupon issues were made up to be tried as the statute directs, (secs. 14 & 15,) but after a jury had been empannelled and sworn the court ordered the issue to be stricken out and made an order granting the prayer of the petitioner.

This ruling of the court is only defended on the ground that Shipman had a remedy for any injury he might sustain by raising of the dam by action against the petitioners, and the twenty-third section of the act is cited to support that view.

But it will be observed, on looking at that section, that the verdict of the jury is final and conclusive on all parties as to " such injuries as were actually foreseen and estimated by that jury." A spring-house is embraced in the term out-houses, and as the jury returned that no out-houses would be overflowed, Shipman might recover for any injury to his spring-house on the ground that such injury had not been foreseen or estimated by the jury. But as all the other injuries, which he charged would result from increasing the height of the dam, were enbraced in the first and fourth heads of the verdict, it could be insisted that they " were actually foreseen and estimated by the jury," and therefore for such injuries he could not recover in an independent action.

The court ought not to give permission to erect or increase the altitude of a dam if it appear that the mansion-house of any proprietor, or the out-houses, curtilages or gardens thereto belonging, or orchard, will be overflowed, or that the health of the neighborhood will be materially affected (sec. 18) ; and the public necessity for the erection of a mill ought to be very apparent to justify a court in inflicting injury on any person. A never-failing spring of pure water is invaluable to the health and comfort of a family, and should not be destroyed by the sanction of a court unless the paramount necessities of the public for a mill demand the sacrifice.

The court of appeals of Kentucky said that where the public good is not concerned, a private injury of that kind was an insuperable objection to the erection of a mill. (Morgan v. Bonta, 1 Bibb, 579 ; Payne v. Taylor, 3 A. K. Marsh. 328.)

The judgment will be reversed and the cause remanded ; Judge Scott concurring. Judge Napton absent.