[No. 1610.]

THE STATE OF NEVADA, EX REL. F. W. DIXON, PLAINTIFF AND RELATOR, *v.* F. P. VAN PATTEN, RESPONDENT.

SCHOOL TRUSTEE—OFFICIAL OATH—PROOF—LOSS OF RESIDENCE—QUO WARRANTO. 1. Where the notary public who administered the official oath to a school trustee failed to authenticate the jurat with his official seal, the trustee may show by oral evidence that the oath was in fact taken.

2. Where a school trustee has in fact taken the oath of office, the failure to indorse such oath on the certificate of his election, as required by Comp. Laws, 1804, does not affect his qualification, such requirement being merely directory.

3. A school trustee had been a registered voter of the town for eighteen years, and for sixteen years had resided with his wife in the same house, when, becoming unemployed, he went to work in another town, returning home two or three times each month for three months, when he took his wife and children with him, with a small trunk of clothes. All furniture, bedding, and provisions were left in the house. They remained away seven months, he always intending to return. The school board met every month, and he attended every meeting except one. The family returned at the end of seven months: *Held*, that he had not lost his residence or right to the office of trustee.

PROCEEDING in *quo warranto* by the State of Nevada, on the relation of F. W. Dixon against F. V. Van Patten. Judgment of ouster of respondent.

The facts sufficiently appear in the opinion.

*William Woodburn*, Attorney-General, and *Torreyson & Summerfield*, for Relator:

I. On an information in the nature of a *quo warranto*, the burden is on the respondent to show his own title, and not on the prosecutor or on the state to establish the prosecutor's title. (Paine on Elections, sec. 899; *People* v. *Mayworm*, 5 Mich. 146-8; *People* v. *Miles*, 2 Mich. 438-9; *Clark* v. *People*, 15 Ill. 217; *State* v. *Gleason*, 12 Fla. 265; *State* v. *Beecher*, 15 Ohio, 723.)

II. The certificate of election is *prima facie* evidence of

title to the office. (McCrary on Elections, 3d ed., secs. 271, 283, 284; *People* v. *Jones*, 20 Cal. 53.)

III. The county superintendent shall have power and it shall be his duty: * * * Sixth—To appoint school trustees in all the districts in which the qualified voters fail to elect, and to fill by appointment all vacancies occurring in said office. (Comp. Laws, 1289.)

IV. "Every office shall become vacant: * * * Sixth— The ceasing of the incumbent to be a resident of the state, district, county, city or precinct in which the duties of the office are to be exercised or for which he shall have been elected or appointed." (Comp. Laws, 1816.)

V. "In all cases where trustees are not elected as provided in this act, or whenever vacancies occur, the superintendent of public schools shall fill such vacancies by appointment." (Comp. Laws, 1764.)

VI. It is a condition precedent to the power to appoint that an actual vacancy shall have occurred. (*State* v. *Harrison*, 113 Ind. 438.) The power to make a valid appointment does not arise until there is a vacancy in fact. The existing title of an incumbent cannot be extinguished or affected by the *ex parte* judgment of the executive that the office is vacant. (*State* v. *Harrison*, 113 Ind. 438; *Page* v. *Harden*, 8 B. Mon. 648, 669–70; *O'Neale* v. *McClinton*, 5 Nev. 329–34; *Honey* v. *Graham*, 39 Tenn. 115; *Hiel* v. *State*, 1 Ala. 559.)

VII. If a notary public administer an oath, his signature to the jurat without his seal of office will be sufficient. (*Schaefer* v. *Kienzel*, 123 Ill. 433; *Stout* v. *Slattery*, 12 Ill. 162; *Ashley* v. *Wright*, 19 Oh. St. 291–5; 16 Am. & Eng. Ency. Law, p. 761, n. 1; *Mills* v. *Dunlap*, 3 Cal. 97; *Lutz* v. *Kinney*, 23 Nev. 279.)

VIII. Our statute provides: "The legal residence of a person, with reference to his right of suffrage and eligibility to office, is that place where his habitation is fixed and permanent, and to which, whenever he is absent, he has the intention of returning." (Comp. Laws, 1723.) If a person having a fixed and permanent home in this state break up such home, etc. * * * (Comp. Laws, 1729.) When one leaves his residence for a time, it is the intention with which he does so that is to control. (10 Am. & Eng. Ency. Law,

2d ed. p. 599; 11 Phila. 641-3.)   Temporary absence, as for travel, the performance of labor, obtaining an education, or other purpose, will not affect residence.   (11 Phila. 647.) An absence for months or even years, 'if all the while the party intended it as a mere temporary absence, for some temporary purpose, will not constitute an abandonment.   (*Yonkey* v. *State*, 27 Ind. 236-245; *Mitchell* v. *U. S.*, 21 Wall. 353; *State* v. *Hallett*, 8 Ala. 159; *People* v. *Peralta*, 4 Cal. 175; *Harbaugh* v. *Cicott*, 33 Mich. 242; *Moffitt* v. *Hill*, 131 Ill. 239; 10 Am. & Eng. Ency. Law, 2d ed. p. 601.)

*Trenmor Coffin, A. J. Maestretti*, District Attorney, and *W. C. Gayhart*, for Respondent:

I.   The relators did not qualify as provided by law after their alleged election.   The attempt to qualify was before a notary public who failed to authenticate his act by his seal, if he had one, which renders his attempted act incomplete and of no effect.   (Comp. Laws, 2411; *Sargent* v. *Collins*, 3 Nev. 260; Proffat on Notaries, sec. 56, and authorities cited; *Tunis* v. *Withrow*, 10 Iowa; *Chase* v. *Street*, 10 Iowa, 593.)

II.   The statute of this state requires that a public officer must have his official oath endorsed upon his certificate of election at the time he receives such certificate.   This was not done by the relators at the time of receiving their certificate of election or at any other time.   Therefore they never qualified to fill the offices to which they claim to have been elected.   (Comp. Laws, 1803-4, 1808; *State* v. *Horton*, 19 Nev. 199.)

III.   If the official oath was taken before a notary public, it was required to be endorsed on the certificate of election and certified by the notary.   (Comp. Laws, 1804.)

IV.   The authorities cited by relators hold that all certificates of a notary public to be valid and effectual must be authenticated by his official seal.   This is for the benefit of the public as well as of the officer, that the people at large may know, or have a ready means of ascertaining, who are duly qualified and authorized public officers.

V.   Nothing beyond the most careless and ineffective attempt at qualification is shown by the evidence in this case,

A similar ill-advised attempt at qualification was held to be of no avail in *State* v. *Horton*, 19 Nev. 200-1.

VI.  Admitting, for the sake of argument, that relator Dixon was elected, and that he duly qualified, his office became vacant by his changing his place of residence from Lander county to Nye county, and by his neglecting to perform the duties of his office for more than three months. (Comp. Laws, 1816.)  The general law of this country upon the question of residence is aptly stated and enacted into a statute in Comp. Laws, 1723-29.  The testimony of Dixon himself shows that he removed his residence from Lander to Nye county squarely within the provisions of Comp. Laws, 1727, 1729.

VII.  We submit that a vacancy occured in the offices claimed by relators by reason of their failure to qualify, and in the case of relator Dixon by reason of his removing his residence from Lander county, and by reason of his neglect of the duties of his office for more than three months, and that it was the official duty of the county superintendent of schools to take notice of the fact of these vacancies and to fill them by appointment.  (Comp. Laws, 1289, 1764, 1816; *State* v. *Sadler*, 25 Nev. 131; *State* v. *Jones*, 81 Am. Dec. 401 (19 Ind. 356), notes and authorities cited, p. 405.)

VIII.  After an office has once become vacant by the change of residence of the incumbent or from any cause mentioned in Comp. Laws, 1816, and has been properly filled by the appointment of another, it cannot be resumed or reoccupied by its former holder.  (*State* v. *Allen*, (21 Ind. 516) 83 Am. Dec. 367; notes and numerous authorities cited, p. 272, *et seq.*)

By the Court, BELKNAP, J.:

This is an original proceeding in the nature of *quo warranto*, to determine whether relator or respondent is entitled to the office of school trustee, long term, of Austin school district, in Lander county.

The district attorney of the county, who is ex officio county superintendent of schools, and in whom is vested authority to fill all vacancies in the office of school trustee, deeming that a vacancy existed for the reason that relator had not taken the oath of office as required by law, and that he had

ceased to be a resident of the town of Austin, in which the duties of his office were to be exercised, appointed respondent to the vacancy.

It is tacitly conceded that at the school election in the month of May, 1900, relator was elected long-term school trustee, and was acting as such when he was displaced by respondent.

It was shown that relator was regularly sworn, and took and subscribed to the official oath introduced in evidence in this case before a duly appointed and acting notary public of the county, but the jurat of the notary is not authenticated by his official seal. The seal of the officer would have been *prima facie* evidence that the oath had been taken, but it was not the only evidence of the fact. It was competent for relator to have shown, as he did show by oral evidence, that the oath was in fact taken. In this connection it is urged that the oath was not indorsed upon the certificate of election. Section 1804, Comp. Laws, requires that the oath shall be indorsed upon the certificate of election and signed by the officer. The substantial purpose of this requirement is the qualification of the officer, by taking and subscribing to the oath, and this was accomplished. The provision that the oath shall be indorsed upon the certificate of election is directory merely, and no penalty is imposed for its non-performance.

Upon the question of residence relator testified that he had been a registered voter of the town of Austin ever since the year 1882, and had resided with his family for the past sixteen years in a house owned by Mrs. Stebbins, his wife's mother; that he was by profession a locomotive engineer, and had been employed as such by the Nevada Central Railroad Company upon its line of railroad between Battle Mountain and Austin; that he became unemployed, and, about October 14, 1900, went to Jefferson, in Nye county, to assist his brother-in-law in caring for a band of sheep which they jointly owned. He returned to his home in Austin two or three times each month. Christmas day he brought Mrs. Stebbins from Jefferson to Austin, and remained there until December 31st. January 14th he took his wife and children with him to Jefferson.

In reply to the question, "What, if anything, was done

with reference to breaking up your household in Austin?" he said: "Nothing whatever. I took my wife and two children in the light spring wagon, and left everything in the house—bed, provisions, sewing machine, and the winter's wood—left everything, took nothing, except a small trunk; no bedding, not a thing in the world except a little trunk." His wife returned for a couple of days in the month of March for the purpose of using the sewing machine that they had left behind. The family finally left Jefferson and went back to Austin during the latter part of the month of August.

He testified that he attended a meeting of the school board each month except the month of February, and that he always intended to return to Austin.

This testimony was practically uncontradicted, and needs the aid of no argument to convince us that relator had not lost his residence in the town of Austin.

It is ordered that a judgment of ouster be entered against respondent, with costs.