H. E. MILLER, appellant, v. PALO ALTO BOARD OF SUPERVISORS and R. O. MILLER, sheriff of Palo Alto County, appellees.

No. 49150.

(Reported in 84 N.W.2d. 38)

June 26, 1957.

Hutchison, Hutchison & Carroll, of Algona, for appellant.

Joseph P. Hand, of Emmetsburg, for appellees.

Oliver, J.—Respondent Board of Supervisors, as trustee for Drainage District 61 in Palo Alto County, Iowa, caused to be instituted a proceeding for the condemnation of a strip of land for drainage purposes. Respondent county sheriff appointed a commission which assessed damages for such taking. Thereafter the Board constructed a surface drain upon said strip. Upon petition of H. E. Miller, owner of part of said land, the district court caused a writ of certiorari to issue to the Board and the county sheriff to review the condemnation proceeding. Trial resulted in an adjudication the proceeding was valid and an order annulling the writ. From such judgment and order petitioner prosecutes this appeal.

I. Appellant pleaded the assessment of damages to his real estate was invalid because the commissioners who made it had failed to qualify by filing the oath required by the statute. Error is predicated upon the finding and conclusion of the trial court that the purported oath which was filed was valid.

The authorities recognize various kinds of oaths, among which are the oath taken by a witness, the oath of an affiant to attest the truth of a writing, and the qualifying oath, juramentum promissionis, such as the one here in question, which is a pledge or promise, taken by one chosen to perform some duty. See 67 C. J. S., Oaths and Affirmations, section 1; 39 Am. Jur., Oath and Affirmation, sections 2 and 4. However, the essential elements of a valid oath do not vary with the nature of the oath. One of these is that both the person taking it and the one administering it must realize it is an oath. Although no specific form is usually required, some act of each should characterize the taking and administering of the oath as such. See 39 Am. Jur., Oath and Affirmation, section 13; 67 C. J. S., Oaths and Affirmations, section 6.

Chapter 472, Code of Iowa, 1954, governs procedure under the power of eminent domain. Section 472.7 provides:

"Commissioners to qualify. Before proceeding with the assessment all commissioners shall qualify by filing with the sheriff a written oath that they will to the best of their ability faithfully and impartially assess said damages and make written report to the sheriff."

Compliance with statutory provisions of this nature is essential. 29 C. J. S., Eminent Domain, section 295; 20 C. J., Eminent Domain, section 417d. Thomas v. Boise City, 25 Idaho 522, 537, 138 P. 1110, 1114, an eminent domain case involving the administration of the oath to the appraisers by an unauthorized person, quotes with approval: " 'All the authorities agree that the failure to take this oath (oath required by the statute) in substantially the form prescribed by law renders all the proceedings invalid. * * *.' "

The purported oath filed with the sheriff is as follows:

"State of Iowa—Palo Alto County—ss: We ............
do each of us solemnly swear that to the best of our knowledge

and abilities we will faithfully and impartially appraise the present cash value of the property taken and the damages to the above described lands."

(Signed by each of the six commissioners)

"Sworn to and subscribed, before me this . . . . day of . . . . . . . . . . . ., A. D., 1955.

. . . . . . . . . . . . . . . . . . . . . . . . . . .
Notary Public in and for Palo
Alto County, Iowa.

"My Commission expires July 4, 1957."

In the recent case of In re Estate of Hoyt, 246 Iowa 292, 298, 67 N.W.2d 528, 532, this court considered a similar instrument and stated: "* * * the purported affidavit * * * was made by one Clarence D. Russell. But there is no showing it was made before any person authorized to take or administer oaths, or, for that matter, before anyone. It is signed by Russell, and below his signature appear the words 'Notary Public in and for Keokuk County, Iowa.' But there is no jurat and no signature of any notary. * * * We know of no authority which holds the administering officer may be entirely dispensed with." The court concluded, "The paper amounted to no more than an unverified statement * * *."

To the same effect is Tunis v. Withrow, 10 Iowa 305, 307, 308, 77 Am. Dec. 117.

In McGillivray Bros. v. District Township of Barton, 96 Iowa 629, 630, 633, 65 N.W. 974, an itemized statement for a mechanic's lien "was in fact sworn to by one of the members of plaintiff's firm, but, by mistake or oversight of the notary, the jurat was not written out in said statement, nor was the notary's name signed, nor was any impression of seal thereon. * * * The claim, therefore, was not a sworn statement, such as the law requires, and hence it could not be made the basis of a liability against the defendant." In that case the court denied an application to amend the statement by adding a jurat. It may be well to observe that this court, under some circumstances, has allowed the amendment of jurats to be made nunc pro tunc. See Stone v. Miller, 60 Iowa 243, 249, 250, 14 N.W. 781; Stout v. Folger, 34 Iowa 71, 76, 77, 11 Am. Rep. 138.

■ The instrument in question in the case at bar contained a blank jurat, prepared for a notary public. Apparently it had been handed the sheriff. The findings of the trial court recite the oath was apparently signed by each commissioner in the presence of the sheriff. However, the sheriff did not testify he administered the oath to the commissioners. He testified merely that the commissioners signed the paper at his request and in his presence and that they were not sworn. There is nothing in the record to indicate the sheriff knew he was authorized to administer the oath by Code section 78.2, or that he understood he was administering an oath or that the commissioners were sworn. Apparently there was no other testimony concerning the circumstances surrounding the signing and filing of the paper. None of the commissioners testified to such circumstances or that he understood he was taking an oath.

■ The purpose of the jurat is to prove the oath was administered. 67 C. J. S., Oaths and Affirmations, section 7, states in part:

"A jurat is simply evidence of the fact that an oath was properly taken before a duly authorized officer, * * *. Where the jurat of the officer administering the oath is lacking, it has been held that the actual taking of the oath may be established by other evidence, at least where the oath is in the nature of a pledge required by a statute."

In 1 A. L. R. 1568 and 116 A. L. R. 587 are annotations on the "Necessity and sufficiency of officer's jurat or certificate as to oath." June v. School District No. 11, 283 Mich. 533, 536, 537, 541, 278 N.W. 676, 677, 679, 116 A. L. R. 581, 582, 583, 585, 586, was an action for breach of a teacher's contract by a school district. The defense was failure to take a required oath. "On the trial plaintiff testified that she had taken such oath at the time of signing the contract. * * * Defendant, however, argues that the oath must be executed in the form of an affidavit, and that because of the absence of a jurat it is fatally defective." The decision discusses cases holding the absence of a jurat to such an oath raised a presumption that the oath was not taken, and that such presumption could be rebutted by showing the oath was actually administered. It continues: "The

rule is clear that the actual taking of such an oath in the nature of a pledge may be shown by evidence on the hearing, where it does not appear by jurat that the oath was administered. * * * Because of the fact that plaintiff took the required oath, which was administered to her by an officer qualified to administer such oaths; because she further subscribed the oath; because the said oath was administered to her on the occasion and at the time when the contract was executed, plaintiff did everything required of her."

However, the record in the case at bar is not comparable to that in the cited case. There the teacher testified she took the oath. Here the only evidence was that the commissioners signed at the request and in the presence of the sheriff and that they were not sworn. In Federal Chemical Co. v. Farmers Produce Exchange, Mo. App., 118 S.W.2d 1067, the signed instrument with blank jurat was filed with the deputy clerk who stated he failed, by oversight, to administer the oath. The court held this statement required the conclusion the affidavit was not sworn to.

We hold the evidence here insufficient to prove the oath was administered to the commissioners. It follows they failed to qualify and their assessment of damages to appellant's land was invalid.

■■ II. Appellees contend certiorari was not the proper procedure and that appellant's only recourse was by appeal. Rule 306, R. C. P., provides: "A writ of certiorari shall only be granted * * * or where an inferior tribunal, board or officer, exercising judicial functions, is alleged to have exceeded its, or his proper jurisdiction or otherwise acted illegally." This Rule of Civil Procedure and rule 308 abolish the provision in the former statute, Code of 1939, section 12456, that certiorari was not proper if there was another plain, speedy and adequate remedy.

State ex rel. Rankin v. Peisen, 233 Iowa 865, 10 N.W.2d 645, holds certiorari will lie where the trial judge reaches an illegal conclusion based upon stipulated and undisputed facts. Massey v. City Council of Des Moines, 239 Iowa 527, 31 N.W.2d 875, holds the provision in the rule limiting certiorari to cases where the respondent is exercising judicial functions does not mean judicial functions in the strict or technical sense in which

the term is used when applied to courts, and that certiorari will lie if the act is of a quasi-judicial character. The Massey case holds also the elimination of the requirement that there is no other plain, speedy and adequate remedy indicates a purpose to broaden the scope of review by certiorari.

The boldface in 30 C. J. S., Eminent Domain, section 373, states: "Certiorari may be available in condemnation cases involving jurisdiction of the lower tribunal, illegality or irregularities in the proceedings, or the due exercise of statutory powers; but the grant or refusal thereof is within the reviewing court's discretion."

Section 374 states in part: "Where * * * an appeal waives all questions as to irregularities in the initial proceedings, errors in the proceedings of the commissioners are properly reviewable by certiorari."

In Abney v. Clark, 87 Iowa 727, 730, 731, 55 N.W. 6, 7, a writ of certiorari issued to the board of supervisors to review the validity of an allowance of damages fixed by appraisers whose appointments were illegal. The decision states:

"But it is said the parties in this case had notice in time to have taken an appeal, if not satisfied with the allowance. It must be remembered that this right of appeal is given in addition to the right of an appraisement made under a proper observance of the law. The claimant is entitled, first, to a due appraisement, which he may accept, if he so elects, or from which he may appeal, if he deems it inadequate. * * *

"It is not necessary that we should determine that the proceedings in this case are absolutely void, so as to be of no validity for any purpose; but in our judgment the failure to observe the law as to the time of appointing appraisers was an illegality that affected the final action of the board in establishing the road, and that the same should be held for nought."

Usually, the failure to appeal waives the question of the sufficiency of a condemnation award. Where such waiver has resulted certiorari has been said to be proper to review the validity of the condemnation. See Reter v. Davenport, R. I. & N.W. Ry Co., 243 Iowa 1112, 1124, 54 N.W.2d 863, 870, 35 A. L. R.2d 1306; Runner v. Keokuk, 11 Iowa 543, 546, 547.

In the case at bar the board accepted the award of the commissioners, took possession of appellant's land, deposited with the sheriff the amount assessed in appellant's favor and proceeded with the improvement. Neither party appealed to the district court. Under all the circumstances shown in the record we conclude certiorari was available to appellant.

III. Appellant assigns error to the holding of the trial court that the notice of assessment served upon him sufficiently complied with Code section 472.9. Our conclusion makes discussion of this assignment of error unnecessary. It is sufficient to state it is not well founded.

Our holding in Division I hereof that the assessment of the damages to appellant's land was invalid requires the reversal of the judgment of the trial court.—Reversed.

BLISS, C. J., and GARFIELD, WENNERSTRUM, HAYS, THOMPSON, and LARSON, JJ., concur.

SMITH and PETERSON, JJ., dissent.

SMITH, J. (dissenting)—Having written what was intended (but failed) to become the opinion of the court, I shall embody in a dissent the considerations which I think demand an affirmance.

There is intended no disagreement here with the early pronouncement in Walters v. Houck, 7 (Clarke) Iowa 72, that since condemnation is the usual proceeding by which a person receives compensation for his property taken for public use the statutory requirements should "be fully and fairly obeyed." And certainly the command that the commissioners selected to appraise damages shall, before proceeding with the assessment, "qualify by filing with the sheriff a written oath," was not one to be disregarded. Whether it was in legal substance complied with here is really the crux of this controversy. I agree with the trial court and would affirm.

The parties have acquiesced in the trial court's statement of facts and have submitted no oral testimony. The trial court says: "The evidence affirmatively shows that each" of six commissioners "signed this purported oath *at the request of the sheriff and in his presence.*" (Emphasis supplied.) The trial court also held that once the defendant Board's application to

the sheriff is made "the condemnation proceedings are commenced, and the proceedings thereafter by the sheriff and the appraisers are not judicial, but are administrative." That conclusion seems sound. At least no one questions it here.

The oath of office of the commissioners is a step in the proceedings but not one incidental to jurisdiction. Even complete failure of the appraisers to comply with the qualification statute would surely not invalidate what had gone before, notwithstanding the quoted pronouncement of the Idaho Court in Thomas v. Boise City, 25 Idaho 522, 537, 138 P. 1110, 1114: "'All the authorities agree that the failure to take this oath * * * in substantially the form prescribed by law renders all the proceedings invalid.'"

There is no connection between the qualifying by the commissioners and the general legality of the decision by the defendant Board to condemn or of the proceedings generally. The only possible contention, it seems to me, would be that the commissioners' appraisal was invalidated by the sheriff's failure to sign the jurat to the oath of office he had them sign.

The majority opinion begs the whole question by citations to the effect that "compliance with statutory provisions of this nature is essential." Of course that is true. But the question here is as to whether there *was* substantial compliance with the statutory admonition that "all commissioners shall qualify by filing with the sheriff a written oath."

What is a "written oath"? Must it be also first orally administered and by the affiant orally assented to? Or must the affiant be first orally "sworn" before being permitted to sign it? I would attach no such barbaric or medieval meaning to the statute. I think a written oath means one the affiant has *subscribed* before the authorized official. The jurat is simply evidence it was so subscribed.

As said in 67 C. J. S., Oaths and Affirmations, section 7 (cited in majority opinion) where the jurat is lacking the fact may be established by other evidence "*at least where the oath is in the nature of a pledge required by a statute.*" (Italics supplied.) That is of course the case here.

"The courts are not entirely agreed as to the effect of the omission of a jurat * * *. According to the majority view, such

an omission is not fatal to the validity of the affidavit, so long as it appears, either from the rest of the instrument or from evidence aliunde, that the affidavit was, in fact, duly sworn to before an authorized officer." 1 Am. Jur., Affidavits, section 19, page 946. See also 2 C. J. S., Affidavits, section 21d(7); 67 C. J. S., Officers, section 38, page 192, citing State ex rel. Dixon v. Van Patten, 26 Nev. 273, 66 P. 822.

In June v. School District No. 11, 283 Mich. 533, 278 N.W. 676, 679, 116 A. L. R. 581 (a teacher's action on her contract for salary, withheld because of her claimed failure to take a required oath), plaintiff testified she had taken the oath; and the Michigan Supreme Court held the fact could be (and in fact was thereby) established by other evidence. The majority opinion cites the case and appears to agree other evidence *could* supply the lack of signature to the jurat.

The trial court here found "the evidence affirmatively shows that each of these six men (the commissioners) signed this purported oath *at the request of the sheriff and in his presence.*" (Emphasis supplied.) There is no disagreement with or criticism of the finding.

Nor is there any reason from their subsequent procedure to *infer* any failure on their part to qualify as appraisers. The trial court leaned heavily on Dalbey Bros. Lbr. Co. v. Crispin, 234 Iowa 151, 156, 12 N.W.2d 277, which, as will appear from an examination of it, gave us plenty of trouble in its own right.

It is authority however that to make a valid oath it is sufficient "'there must be * * * in the presence of an officer authorized to administer it, an unequivocal and present act by which the affiant consciously takes upon himself the obligation of an oath.'" Certainly these six commissioners knew what they were signing and I would hold it was a "written oath" by any reasonable standard.

I am acutely conscious a dissent should have back of it something more important than mere pride of opinion of the dissenter on some unimportant point of law. We, as members of the court, do resolve many differences. The importance of the result here however seems to justify some protest. To annul what has been actually accomplished, merely because of the

sheriff's omission to sign the jurat, seems unjustifiably technical. Judicial decisions should, when possible, avoid mere technicalities.

There is here no evidence the absence of the jurat has injured plaintiff. His property is taken for public use and he is entitled to just compensation. But the irregularity appearing here has no relation to any complaint as to the propriety of the condemnation or of the adequacy of the amount allowed. The trial court approached the question conscientiously and with a realization of its difficulties.

I would affirm the decision.

PETERSON, J. (joining in dissent)—In connection with joining in the dissent of JUSTICE SMITH, I desire to add a brief statement. Apparently the principal Iowa case on which the majority bases its reversal is In re Estate of Hoyt, 246 Iowa 292, 298, 67 N.W.2d 528, 532. I differ with the majority that affirmance of this case will reverse the pronouncement in the Hoyt case as to oaths or jurats. All documents as to condemnation are records in the sheriff's office. As a part of the procedure in this case each commissioner signed at the request of the sheriff, and in his presence, a written statement that: "We _____ do each of us *solemnly swear* [emphasis added] * * *." The sheriff failed to sign the jurat. The record is undisputed they signed an oath to properly perform their duties. They entered upon their duties under the oath. Their duties were properly performed. The condemnee was not in any manner prejudiced by the failure of the sheriff to perform the administrative function of attaching his name to the oath.

In the Hoyt case, Russell signed no oath comparable to the commissioners' oath. The opinion states: "* * * there is no showing it was made before any person authorized to take or administer oaths, or, for that matter, before anyone." The facts are so different that, in my opinion, we do not need to overrule the Hoyt case, in order to affirm this case.

I support JUSTICE SMITH's dissent.