WILLIAM EIKENBERRY, et al., Appellants, v. ST. PAUL & KANSAS CITY SHORTLINE RAILROAD COMPANY, Appellee.

**EMINENT DOMAIN:** Extent of Power—"Approaches" and "Embankments"—Construction of Statute. "Approaches" constructed by a railway company under Sec. 2017, Code, 1897, on a public highway, in order to carry such highway over the railway tracks, are "embankments" within the meaning of Sec. 1998, Code Sup., 1907, authorizing the condemnation of lands for *em-*

*bankments,* etc., such latter term not being limited to embankments for the support of the track only.

DEEMER, WEAVER and PRESTON, JJ., dissent.

**EMINENT DOMAIN:** Extent of Power—''Necessity'' for Embank-
2  ments—Findings by Railroad Commission—Effect.   The State Railroad Commission being charged by Sec. 1998, Code Sup., 1907, with the duty of determining, on notice to the landowner, the *necessity* for additional condemnation by a railway company of lands for ''embankments'', etc., the certificate of necessity of the Commission is in the condemnation proceedings instituted under the order of the Commission, presumptively correct.

DEEMER, WEAVER and PRESTON, JJ., dissent.

*Appeal from Lucas District Court.*—F. M. HUNTER, Judge.

TUESDAY, FEBRUARY 8, 1916.

ACTION in equity to enjoin the defendant railroad company from occupying plaintiff's land under condemnation proceedings, and to enjoin defendant from building crossing approaches thereon, because, as plaintiffs allege, the statute, as it existed at the time the condemnation proceedings were instituted, did not authorize condemnation for such purpose. A demurrer to the petition was sustained, and plaintiffs appeal.—*Affirmed.*

*Storie & Kridelbaugh,* for appellants.

*J. A. Penick* and *F. W. Sargent,* for appellee.

EVANS, C. J.—It appears from the petition that, in the year 1913, the defendant railroad company was engaged in constructing a line of railroad through the city of Chariton, Iowa, across Auburn Avenue in said city and through the lots of the plaintiffs. The plans contemplated an overhead crossing for Auburn Avenue. For the purpose of such overhead crossing, embankments were proposed as approaches thereto on either side of the right of way. The proper construction of such embankments required the condemnation of ground in excess of the 100 feet within the right of way. The following plat indicates the general situation in that regard:

EXPLANATION OF PLAT;
1   Right of way.
2   Auburn avenue
3   Land taken out of lots 1 and 2.
4   Land taken out of lot 43.
5 and 6   Foundation of crossing approach.

The question presented by the demurrer involves the construction of Section 1998, Code Supplement, 1907, as it was at the time of the condemnation proceedings in question. Such section was as follows:

1. EMINENT DO-
MAIN: extent
of power:
"approaches"
and "embank-
ments": con-
struction of
statute.

"Sec. 1998. Any railway corporation owning or operating or constructing a railway shall have power to condemn lands for necessary additional depot grounds or yards, for additional or new right of way for constructing double track, reducing or straightening curves, changing grades, shortening or re-locating portions of the line, for excavations, *embankments*, or places for depositing waste earth in the same manner as is provided by law for the condemnation of the right of way. Before any proceedings shall be instituted therefor, the company shall apply to the railway commissioners, who shall give notice to the land owner, and examine into the matter, and report by certificate, to the clerk of the district court in the county in which the land is situated, the amount and description of the additional lands necessary for such purposes, present and prospective, of such

company; whereupon the company shall have the power to condemn the lands so certified by the commissioners."

It appears from the petition that, prior to the condemnation proceedings now assailed by the plaintiffs, the Railroad Commissioners had regularly examined into the matter and had certified, as required by statute, the additional lands necessary for the purposes already indicated. Subsequent to such certification, the condemnation proceedings were instituted and damages were awarded by sheriff's jury. From such award, the plaintiffs herein prosecuted an appeal to the district court, and thereafter instituted this injunction proceeding.

Because of the conclusion of the majority of us upon the merits of the controversy, we will not inquire into the question whether, under the circumstances here shown, an independent injunction suit will lie.

The controversy between the parties turns upon the question whether the approaches for the purpose of an overhead crossing for the highway were "embankments", within the meaning of Section 1998, above quoted.

The argument for appellants is that the statute should be strictly construed against the condemning company and in favor of the landowner; and that the terms "excavations" and "embankments" should be confined to such as are longitudinal; and that the only "embankments" within the contemplation of the statute are such as are necessary to the support of the railway track; and that the term should not be construed to apply to such embankments or approaches as are necessary only for the purpose of crossing an intersecting highway. This argument, however, puts a very restricted meaning upon the term. The powers and duties of the railway company in respect to railway crossings were fixed by Code Section 2017. The duties imposed by this section upon the railway company were peremptory.

This section (since repealed by Chapter 162, Acts of the Thirty-fifth General Assembly) was as follows:

"Sec. 2017. Any such corporation may raise or lower any turnpike, plank road or other road for the purpose of having its railway cross over or under the same, and in such cases said corporation shall put such road, as soon as may be, in as good repair and condition as before such alteration."

Reading Sections 2017 and 1998 together, we think they do not justify such a restricted construction of the term "embankments" as is contended for by the appellants. The terms of Section 1998 are somewhat broad and sweeping. Indeed, the successive legislation relating to the power of condemnation for railway purposes has been progressive and has apparently sought to meet all the developing needs of railway construction. Under previous statutes, we had formerly held that there was no power to condemn additional lands for depot grounds. *Forbes v. Delashmutt,* 68 Iowa 164. This holding was superseded by the present Section 1998. Section 1995, Code, 1897, limited the power of condemnation to a width of 100 feet, *unless greater width is necessary for excavation, embankment or depositing of waste earth"* and "except for wood and water stations". Section 1996, Code, provided a right of condemnation for reservoir purposes, and Section 1997, Code, provided the same right for the purpose of laying water pipes. Section 1998, with its amendments, as above quoted, superseded previous decisions and enacted broad provisions, subject only to the supervision of the Railroad Commissioners. Since this suit was begun, Chapter 162, Acts of the Thirty-fifth General Assembly, was enacted, as stated above. This enactment only emphasizes the continuing purpose of the legislature to broaden the powers of condemnation for every legitimate purpose incidental to the construction of the railroad. The approaches in question are "embankments", within the ordinary meaning of the term. That such "embankments" or their equivalent are necessary for the purpose of an overhead crossing is unquestioned. The necessity for additional lands for the purpose of their construction was ascertained and certified regularly by the Railroad Commis-

sioners. As "embankments", they are clearly covered by the terms of the statute. We see no appropriate reason for restricting the sense in which such word is used in the statute, so as to exclude them from its operation. To do so would, in our judgment, be a purely arbitrary construction.

Suppose, for illustration, in order to accomplish an overhead crossing for the highway, the railway company had lowered its own grade and had constructed a deep excavation across the highway, in order that its railway might pass under the highway, while leaving the highway at its natural grade. Under this section, additional land could. be condemned for the purpose of "excavation". Under the construction contended for, such an *excavation* would come within the terms and meaning of the statute. If, under this statute and Section 2017, a railway company may resort to *"excavations"* in order to pass *under* a highway, why may it not resort to "embankments" in lieu of "excavations", in order to pass *over* the same highway?

Suppose further that, pursuant to Section 2017, the railway company should proceed to lower the highway in order that it should pass *under* the railway. As an engineering problem, this might involve the raising of the grade of the railway upon an *embankment* and the lowering of the grade of the highway by *excavations*. According to the contention of appellants, the *embankment* in such a case would be such as is contemplated by the statute, but the *excavations* for the highway would not be such excavations as are contemplated by the statute. To put the contention in another way, the railway company may carry its railway under a highway by "excavation" or over such highway by "embankment", and in each case may condemn additional land therefor; but if the problem involves a raising or a lowering of the highway to any extent, then the "embankments" or "excavation" rendered necessary to such raising or lowering of the highway are not within the contemplation of the statute, and condemnation cannot be had therefor; and this notwithstanding that Section 2017

makes it the duty of the railway company to accomplish practical results in carrying such highway across its tracks. We think, however, that the restricted construction of the terms of the statute, as thus contended, is quite uncalled for and clearly contrary to the current course of legislation.

It is argued that approaches could have been constructed without embankments at all, in that timber, steel, or concrete supports could have been used; and that, in such case, no claim of right to condemnation could be made. This argument is not at all conclusive, because it applies with the same force to an embankment supporting the railway track as to the embankments now under consideration. Any embankment may be dispensed with by the use of trestles or other structural support. This argument would render all embankments legally unnecessary, even though intended for the support of the railway track; and therefore, no right to condemnation could be exercised, even for such purpose. This argument, therefore, if carried to its logical end, would render the statute wholly nugatory.

We note the suggestion in argument that the question of the reasonable necessity of the embankments ought to be a matter of pleading and proof; otherwise, the railway company might establish its right to condemnation by merely declaring a purpose to construct embankments, regardless of the necessity for such embankments. We think this suggestion ignores the provisions of the statute as to the duties of the Railroad Commissioners in the premises. No condemnation for additional land can be had without a previous inquiry by the Railroad Commissioners into the necessity for it. The petition in this case disclosed, as already stated, that such inquiry was had and the certification of necessity made.

2. EMINENT DOMAIN: extent of power: "necessity" for embankments: findings by Railroad Commission: effect.

We reach the conclusion that the demurrer to the petition was properly sustained. The judgment below is accordingly affirmed.—*Affirmed.*

Ladd, Gaynor and Salinger, JJ., concur. Deemer, Weaver and Preston, JJ., dissent.

Preston, J. (Dissenting.)—With due respect for the opinion of the majority, I am unable to agree with the conclusion reached, and shall, as briefly as I may, give my reasons for this dissent.

The question presented is, perhaps, not very important now, except as a rule for construction, because, by Chapter 162 of the Acts of the Thirty-fifth General Assembly, the legislature has given the authority to condemn, claimed by the defendant to have existed prior to the enactment of said Chapter 162.

The question presented, as appellee states it, is as to whether, under the law existing at the time in question, a railway company has authority to condemn land for necessary embankments for the purpose of highway crossings over the right of way; and its contention is that the whole question turns upon the use of the word "embankments", in Section 1998 of the Supplement of 1907. The appellee also states its position a little differently by saying that the question is as to the right of condemnation for the purpose of embankments separating a road crossing from the railroad track.

Plaintiffs state the question as follows: Does the statute authorize condemnation of lands for crossing approaches? And they say that the fact that crossing approaches may be built by piling earth in the street, thereby creating what may be called an embankment, cannot in any way determine the issue. And they say that, suppose defendant should build these crossing approaches out of timbers stood on end, and seek to take appellants' land for so doing, they could not assert such an approach as an embankment; and they say further that the fact that the crossing approaches are built out of earth instead of steel or timber will not govern; and they argue that, if the law compelled the company to build these approaches out of timber, steel or cement pillars, it could not

be claimed that such a construction would be an embankment, as contemplated by the statute. Cases are cited by appellants to the effect that statutes granting the right of eminent domain must be strictly construed, and appellee concedes that this is the rule.

The contention and argument for appellee are substantially this: That there are a great number of things for which embankments are necessary in railroad building, other than to support the track; that highway crossings form a very apt illustration; and that the only thing necessary for this court to do is to say whether or not the term "embankments" is to be limited to embankments supporting the track, or whether it is to include all embankments which are reasonably necessary and proper in the construction of the road; that highway crossings over the track may be at grade, or above or below the grade of the track, and that, at the time of the condemnation proceedings in this case, the statutes of Iowa authorized the companies to support the grades; that Chapter 162 of the Acts of the Thirty-fifth General Assembly does not in any manner destroy the right of the company to support the grades, the same as it could do under the law prior to the passage of that act; that, at the time of the condemnation proceedings referred to in this cause, Section 2017 of the Code was in effect, which provided that any such corporation (railroad company) might raise or lower any road for the purpose of having its railway pass over or under the same, and that this statute was in effect at the time the legislature passed Section 1998 of the Code Supplement of 1907, which latter section specifically provided that a railway company might condemn additional land outside of its 100-foot strip for different purposes named in the section, one of which is for embankments; that Section 2017 authorized overhead and underground crossings as necessary parts of a railway (and embankments and excavations outside the 100-foot strip are frequently necessary for such purposes), and stated that additional ground might be taken for excavations and

embankments, and did not limit or narrow the purpose for which the excavations or embankments should be used, and that, therefore, the legislature intended that the railroad company, with the approval of the Railroad Commissioners, might take additional ground for the purposes of any excavations or embankments that were reasonably necessary and proper in constructing the railroad; that a road crossing over a railway track or right of way is as much a part of the railroad as the rails upon which the trains run or the ties which support the rails; that it must follow, then, that an embankment reasonably necessary to support either a surface road crossing, or an overhead crossing, or an excavation for the purpose of an underground crossing, is a part which is necessary in the construction of the railroad, and that, therefore, such embankment or excavation is within the meaning of these words, as used in Section 1998 of the Supplement of 1907.

They cite 3 Elliott on Railroads (2d Ed.), Sec. 1105, and *Clawson v. Chicago & G. S. R. Co.*, 95 Ind. 152 (20 Am. & Eng. R. R. Cases, 56), where it is stated that it has been held that the company may condemn property for the purpose of the necessary approaches and abutments to a new crossing. They also cite 33 Cyc. 272, that the duty of restoring the highway carries with it the right to exercise any powers conferred upon the railroad company by statute which are necessary and proper, and that, for the purpose of restoration, the railroad company may change the grade of a highway or change the location of a highway, and acquire by purchase or condemnation the land necessary for such purpose; and contend that, looking at the statute in this light, it follows that, where an embankment is necessary, and it has been found by the Railroad Commissioners to be necessary for the purpose of carrying a highway over the railroad tracks, then such is an embankment, within the meaning of the statute.

As to some of the appellee's contentions, I cannot assent. An examination of the statutes authorizing the condemnation of lands by a railroad company shows that, until

the enactment of Section 1998 of the Code Supplement of 1907, such a company was limited to the taking of not more than 100 feet, excepting that greater width might be taken, as provided by other sections. Section 1995 authorizes the company to condemn lands, and provides that such land shall not exceed the width of 100 feet, "except for wood and water stations, unless greater width is necessary for excavation, embankment or depositing waste earth". In construing this section, first appearing in the Code of 1873, we held that it was presumed, in all cases where the company sought to take 100 feet or less, that such land was "necessary for the location, construction and convenient use of its railway". On the other hand, it was held that, unless such additional land was to be used for wood and water stations, or for necessary excavation, embankment or depositing waste earth, it could not be taken, no matter how great the convenience or necessity. Under this section, it was held that the company could not take additional land for depot grounds. *Forbes v. Delashmutt*, 68 Iowa 164. See also *Crandall v. Des Moines Railway*, 103 Iowa 684; *Minneapolis & St. L. R. Co. v. Chicago, M. & St. P. R. Co.*, 116 Iowa 687.

Such was the law until the enactment of Code Section 1998, by the Twentieth General Assembly. Section 1996 of the Code granted the right to condemn for reservoir purposes; Section 1997 granted the right to condemn to lay water pipes; and Section 1998, the right to condemn for additional depot grounds. So that, until the enactment of Section 1998 of the Code Supplement of 1907, a railway company could not claim any right to take lands for the construction of crossing approaches thereon. Section 1998 of the Supplement is an amendment to Section 1998 of the Code of 1897, and gives the company greater rights in some respects. It reads:

"Any railway corporation owning or operating or constructing a railway shall have power to condemn lands for necessary additional depot grounds or yards, for additional or new right of way for constructing double track, reducing or

straightening curves, changing grades, shortening or relocating portions of the line, for excavations, embankments, or places of depositing waste earth, in the same manner as is provided by law for the condemnation of the right of way.''

Code Section 2017 was repealed by Chapter 162 of the Thirty-fifth General Assembly, and it is not necessary, perhaps, to quote that section. The statute repealed by this act provided that a railway company ''may raise or lower any turnpike, plank road or other road for the purpose of having its railway cross over or under the same, and in such cases said corporation shall put such road, as soon as may be, in as good repair and condition as before such alteration''.

Such was the law at the time the condemnation proceedings were commenced by the defendant in this case.

We think Section 1998 of the Supplement to the Code, 1907, does not authorize the condemnation of land for the purpose of constructing crossing approaches to an overhead bridge. Before it could be so held, a construction of the statute would be necessary, to the effect that the term ''embankments'' was used by the legislature with the intention that it should mean the same as the term ''crossing approach'', or that, because the railroad company is in this case building an earthen crossing approach and such structure might be termed an embankment, it was the intention of the legislature, when enacting this statute, that the term ''embankment'' should cover all such structures, regardless of the purpose for which they were to be used.

It seems to me that, to sustain the demurrer, we must find that the purpose and use of the embankment is immaterial. Whether or not the embankment is reasonably necessary and proper in constructing the railroad, as argued by appellee, is a question of fact, we think, which must be raised by answer, and not by demurrer. Otherwise, all the company would have to do would be to build an embankment, whenever it wants to condemn private property, and then use

that embankment for crossing approaches, stockyards, elevators, storage houses, or for any other purpose. There is nothing in the petition or demurrer showing the location of the crossing approaches, whether the grade is higher or lower than the grade of the tracks used, whether a grade crossing would have been better or worse than an overhead crossing, or any other fact showing that these crossing approaches were necessary and proper in the construction of the road. It may be that these approaches are not necessary at all; that a grade crossing would give better service than the overhead. The demurrer raises but the one issue, and that is the right of the company to condemn private property for the purpose of placing an embankment of earth thereon, regardless of the use of such embankment. It is true that appellants' petition shows that these embankments are used as crossing approaches; but we think there is no presumption that all crossing approaches that a company may desire to build are reasonably necessary and proper. The burden is upon the company to show that the grant of the power is for the specific purpose for which it proposes to appropriate the landowner's property. *Northern Light v. Stacher*, (Calif.) 109 Pac. 896; *Marshall v. Village*, (Vt.) 76 Atl. 411; *Western Union Tel. Co. v. Pennsylvania R. Co.*, 120 Fed. 362.

It may be that it was unnecessary to the discussion to refer to the question as to whether the crossing approaches were reasonably necessary. We have referred to the point briefly because it is a part of appellee's discussion. The fact that these embankments are constructed by piling earth upon a certain spot does not prove them to be embankments, and certainly does not show them to be such embankments as are contemplated by the statute. The question is: Does the statute authorize condemnation of lands for crossing approaches, or did it at the time these condemnation proceedings were commenced? The fact that crossing approaches may be built by piling earth in the street, thereby creating what might be called an embankment, in one sense does not

necessarily determine the issue. The language used in the notice given by the defendant in this case reads:

"Has taken and appropriated to its own use the following described real estate, being additional land necessary for the use of its railroad, for additional new right of way, for changing grades, for excavations and embankments, or for public crossing approaches across its tracks."

In this, other terms than "embankments" are used, particularly the last clause, indicating that the company, in preparing the notice, did not consider the term "embankments" as synonymous with "crossing approaches". In a sense, earth piled into an artificial bank or mound would be an embankment. 15 Cyc., 485. But we think, as used in the section of the statute under consideration, it means only those embankments upon which tracks are laid, or which are part of the road bed, and that the statute only permits the taking of land additional to the 100 feet when these embankments must be made so high that a base of 100 feet is not sufficiently wide. If there is doubt as to whether the statute grants greater authority than this, that doubt should be resolved against the defendant. Authority to take land by condemnation for the purpose in question must be found, if at all, in the statute; for the company is attempting to exercise one of the highest prerogatives a sovereign can delegate to a subject, as stated in *Minneapolis & St. L. R. Co. v. Nicolin* (Minn.), 79 N. W. 304. The power must be clearly granted, and every presumption is in favor of the individual landowner. *Minnesota Canal Co. v. Koochiching* (Minn.), 107 N. W. 405 (5 L. R. A. (N. S.), 638, 642.)

There is a suggestion in argument by appellee that plaintiffs have an adequate and speedy remedy at law in view of the fact that they elected to appeal from the award of the sheriff's jury. But, without further discussion, we think the cases of *Forbes v. Delashmutt*, 68 Iowa, at 164, and *Laplant v. City of Marshalltown*, 134 Iowa 261, 264, hold that, under similar circumstances, an injunction will lie.

In my opinion, the law at the time these proceedings were commenced did not authorize condemnation for purposes of crossing approaches, such as were contemplated by the company in this case. I would reverse.

DEEMER and WEAVER, JJ., join in the dissent.