FRANK D. RETER (also called FRANK RETER) et al., appellees, v. DAVENPORT, ROCK ISLAND AND NORTH WESTERN RAILWAY COMPANY, an Iowa corporation, appellant.

No. 48017.

(Reported in 54 N.W.2d 863)

1114

September 16, 1952.

Lane & Waterman, of Davenport, and E. C. Halbach, of Clinton, for appellant.

Adam A. Kreuter and George C. Claassen, both of Cedar Rapids, for appellees.

SMITH, J.—On February 12, 1947, defendant and Clinton Industries, Inc., united in an application to the Iowa State Commerce Commission for a certificate of necessity permitting condemnation of a sixty-foot right of way over plaintiffs' premises for additional switching and storage trackage to the Clinton Industries plant pursuant to chapter 481, Iowa Code 1946 (1950) I.C.A. (All Code citations refer to this Code.)

Over objections by plaintiffs and after due notice and hearing the commission (June 17, 1947) ordered that a "Certificate of Authority to condemn real estate be issued * * * certifying that the parcel of land * * * is essential for railroad purposes in connection with the providing of an industrial service track to the Clinton Industries, Inc., Clinton, Iowa." Any taking for "storage track" was denied and the width of the proposed right of way accordingly limited to thirty feet instead of sixty as asked.

Thereafter defendant instituted condemnation proceedings under the provisions of Code chapter 472 and the amount of the resulting award ($4500) was deposited with the sheriff. Plaintiffs' petition on appeal to the district court, August 15, 1947, named both defendant railway company and Clinton Industries as defendants.

After a long and involved series of procedural moves— motions, rulings and amendments to and recasting of pleadings— plaintiffs, on March 9, 1950, filed a "second amended and substituted recast petition" naming defendant railway company as sole defendant. Count I (our only concern here) prays that both the proceeding before the commerce commission and the subsequent condemnation proceeding "be voided and held to be of no force and effect in that it be adjudged there was and is no necessity for the condemnation of plaintiffs' said property." It also alleges the proposed taking "was intended for purely private and not for public use."

The matter went to hearing August 14, and 15, 1950, on defendant's application (under rule 105, Rules of Civil Procedure) for "determination of points of law" raised in plaintiff's Count I. After some discussion among court and attorneys as to the issues and the nature of the hearing—whether de novo or otherwise— the weight to be given the commission's ruling and certificate of

necessity, the admissibility of extrinsic evidence and the burden of proof, the court, with apparent approval of counsel, expressed a tentative opinion that two issues were here presented, one constitutional and the other the validity of the commission's action under the evidence presented before it. To this plaintiffs' counsel added "one other related question * * * whether or not the land being condemned here is for private or for public purposes."

Plaintiffs offered a transcript of the commerce commission hearing and the various objectors' exhibits in connection therewith. Defendant offered the commission's decision, order and certificate of authority or necessity and the blueprints submitted by defendant railway company and Clinton Industries at the hearing before the commission.

In addition plaintiffs called witnesses to show there was no necessity for the proposed taking and that it was in fact for a private and not a public purpose. The testimony was received subject to objection as in equity.

The trial court voided the condemnation proceedings, squarely holding the proposed taking of plaintiffs' property was for a *private use* and therefore unconstitutional, and that it was unnecessary to determine the question of *necessity* or the admissibility of testimony on that point. Defendant appeals from the decision. The adequacy of the award (Count II) has not yet been litigated.

I.  An extensive statement of the physical facts is unnecessary. Clinton Industries, Inc. (now Clinton Foods, Inc.) was and is a large industrial concern engaged in processing corn and manufacturing various food products from corn and soybeans. Its plant is located in Clinton along a branch of the Mississippi River known as Beaver Slough.

Plaintiffs own a smaller area also lying along Beaver Slough, and surrounded on all other sides by the Clinton Industries property. Plaintiffs' property was originally used in the conduct of a business of selling wood and ice and more recently coal. There is testimony they were contemplating sale of gravel to be brought up the Beaver Slough from other land owned by them farther downstream.

Both Clinton Industries and plaintiffs were served by spur tracks of the defendant railway company but Clinton Industries

had, in 1946, planned an extensive enlargement and rearrangement of its plant to meet its expanding business. The company claimed its then existing track connection with defendant was inadequate. The planned new right of way crossed plaintiffs' premises. Hence the joint application to the commerce commission and the long litigation leading to this appeal.

██ II. The power of eminent domain is inherent in the sovereign state and is not dependent on express constitutional grant. 29 C. J. S., Eminent Domain, section 2. The right to exercise the power is delegable to railroads because the use to which they devote the property is inherently public. Stewart v. Board of Supervisors, 30 Iowa 9, 19–26, 1 Am. Rep. 238; 29 C. J. S., Eminent Domain, section 37.

Code section 481.3 authorizes a railroad to acquire necessary right of way "by condemnation or purchase" for "a reasonably adequate and suitable spur track * * * required for the successful operating of any existing * * * industry." It expressly provides "No such track is required to be constructed until * * * the state commerce commission, after hearing, shall have declared the same to be necessary." There are some other qualifying provisions not material here.

Later sections (481.4, 481.5 and 481.6) provide that the one *"primarily to be served"* may be required to pay the cost of acquisition and construction. Section 481.7 furnishes a method by which the one "primarily to be served" may go to the commerce commission, which "after reasonable notice to the railroad company shall investigate and determine all matters in controversy and make such order as the facts * * * will warrant." Section 481.8 provides that any subsequent user of the track shall repay "the one primarily to be served" an equitable proportion of the primary cost "to be determined by the commission."

In addition to these provisions of chapter 481, Code section 471.6 gives railroads the right to condemn for general railroad purposes and section 471.9, subsection 2 expressly authorizes condemnation for purposes of acquiring right of way for spur track:

"Any such corporation * * * may, by condemnation or otherwise, acquire lands for the following additional purposes: * * *

"2. For the purpose of constructing a track or tracks to any *.* * manufactory, warehouse, or mercantile establishment."

The provisions of Code chapter 481 clearly purport to authorize condemnation by a railroad company of right of way for a spur track *even though it be originally intended to serve but one private industry.* Code section 481.7 surely contemplates that a reluctant railroad could be compelled, upon application to the commission, to acquire such right of way in an appropriate case. Chicago & N. W. Ry. Co. v. Ochs, 249 U. S. 416, 419, 39 S. Ct. 343, 63 L. Ed. 679.

III. Is such litigation constitutional? Does it violate fundamental provisions, state and federal, against taking private property for private use? Clearly the statutes above set out constitute legislative determination that the use referred to is public even though there be (as here) but one industry "primarily to be served."

The right of eminent domain being an attribute of sovereignty the legislature has the initial duty of determining what constitutes a public use. Sisson v. Board of Supervisors, 128 Iowa 442, 452, 453, 104 N.W. 454, 458, 70 L. R. A. 440; 29 C. J. S., Eminent Domain, section 30; 18 Am. Jur., Eminent Domain, section 146; Bankhead v. Brown, 25 Iowa 540, 545; Noll v. Dubuque B. & M. R. Co., 32 Iowa 66. "It is for that body [the legislature] to determine in the first instance * * * what are the public uses, to subserve which a grant of power [to condemn] may properly be made. That this may not be done arbitrarily, and having no proper regard for the character of the conditions to which application is to be made, or the results to follow the use, may readily be conceded. * * * It is to be said, however, that the doctrine common to statutory construction, from the viewpoint of the Constitution, is applicable here * * * that interference on the part of the courts will not be warranted, except there be presented a clear, plain, and palpable case of transgression." Sisson v. Board, supra. See Bankhead v. Brown, 25 Iowa 540, 545, 546, in which Judge Dillon says: "But 'if a public use be declared by the legislature the courts will hold the use public, unless it manifestly appears by the provisions of the act, that they can have no tendency to advance and promote such public use.' Per Shaw, Ch. J., in Hazen v. Essex County, 12

Cush. 477." See also opinion by Judge Miller in Stewart v. Board of Supervisors, supra, 30 Iowa 9, 19 et seq.

It is in this constitutional sense only that the question of public use may be said to be judicial. It is ultimately for the courts only where constitutionality of the legislative declaration is questioned. As the rule is commonly stated: "Where the legislature declares a particular use to be a public use, the presumption is in favor of its declaration, and the courts will not interfere therewith unless the use is clearly and manifestly of a private character." 29 C. J. S., Eminent Domain, section 30, page 822. See also text of, and cases cited in, 18 Am. Jur., Eminent Domain, section 46.

IV. Coming to an application of this rule to the instant case we have no doubt of the constitutionality of the statutes involved here. The defendant railway company proposes to make the contemplated spur track a part of its railway system, subject to the same control and under the same public regulations and obligations as apply to the other parts thereof. In no sense is the proposed spur track to be the private property of Clinton Industries (now Clinton Foods, Inc.).

"The test of public character is not in the number of persons or corporations located along the line of a proposed branch, but in the character of the use to which the branch will be put." Vollick v. Lehigh Valley R. Co., 104 N. J. L. 283, 286, 140 A. 673, 674.

As said in Menasha Woodenware Co. v. Railroad Commission of Wisconsin, 167 Wis. 19, 25, 166 N.W. 435, 438, a case strikingly in point: "In its very nature it [a spur track] cannot serve the public in the complete manner that an extension [of the main line] does, because it is not intended for passenger service and it only reaches the property of one industry, or perhaps several; but its use is none the less public on the part of the one industry or the several industries which it serves, because thereby the one industry or the several industries are enabled to be reached by the public and to be served by the common carrier to the fullest extent. The service of any particular spur is denied to no industry which it is reasonably feasible for the spur to serve, provided the industry pay its equitable share of the cost; in other words, all concerns which can possibly have any occasion to use the track

* * * are given the right to use it on the same equitable terms. This must be held public use in a true sense, although not a public use of precisely the same quality as that which pertains to an extension of the main line of a railroad."

See also the language in Tift v. Atlantic Coast Line R. Co., 161 Ga. 432, 441, 131 S.E. 46, 50: "If the track is opened to the public, to be used on equal terms by all who may at any time have occasion to use it, so that all persons who have occasion to do so can demand that they be served without discrimination, not merely by permission, and if the track is subject to governmental control under general laws, and in the same manner as are the main lines of a railroad, then the use is a public one." See Ulmer v. Lime Rock R. Co., 98 Maine 579, 57 A. 1001, 1004, 66 L. R. A. 387; Dotson v. Atchison, T. & S. F. R. Co., 81 Kan. 816, 106 P. 1045, 1047 et seq.

We think these authorities apply the correct test as to whether a contemplated use is public, although we are aware there is respectable authority which seems to hold otherwise. In Armstrong v. Illinois Cent. R. Co., 153 Tenn. 283, 295, 282 S.W. 382, 385, the Tennessee Supreme Court quotes with apparent approval the rule as stated in 20 C. J. 568:

"A branch or lateral road or spur track necessary to the proper operation of the main line of a railroad, or which may be necessary to connect important industries, or even a single industry, with the main line or other public highways, provided, however, that the general public has a right to use it, although such branch or lateral road or spur track may also subserve private interests, and private persons may contribute to the expense thereof, is a public use for which private property may be taken under the power of eminent domain." Same text 29 C. J. S., Eminent Domain, section 39.

The principle is thus stated in 18 Am. Jur., Eminent Domain, section 62: "When, however, the branch or spur is open to public use in the same manner as the rest of the railroad, the fact that when constructed it will lead to the works of a single establishment and will probably be used almost wholly by that establishment is no bar to the acquisition of the necessary land by eminent domain." (Note 4.)

The Supreme Court of the United States has not hesitated

to affirm state court decisions supporting the constitutionality of statutes such as we are considering. In Union Lime Co. v. Chicago & N. W. Ry. Co., 233 U. S. 211, 221, 34 S. Ct. 522, 525, 58 L. Ed. 924, 930, Justice Hughes, in considering a Wisconsin statute essentially similar to our own says: "A spur may, at the outset, lead only to a single industry or establishment; it may be constructed to furnish an outlet for the products of a particular plant; its cost may be defrayed by those in special need of its service at the time.` But none the less, by virtue of the conditions under which it is provided, the spur may constitute at all times a part of the transportation facilities of the carrier which are operated under the obligations of public service and are subject to the regulation of public authority. * * * There is a clear distinction between spurs which are owned and operated by a common carrier as a part of its system and under its public obligation and merely private sidings." See also Alton R. Co. v. Illinois Commerce Comm., 305 U. S. 548, 553, 59 S. Ct. 340, 342, 83 L. Ed. 344; Chicago & N. W. Ry. Co. v. Ochs, 249 U. S. 416, 419, 420, 39 S. Ct. 343, 63 L. Ed. 679, supra.

It would unduly extend this opinion to refer separately to the numerous authorities cited by plaintiffs. Many of them can be distinguished—some by reason of procedural differences and others because they do not involve statutory provisions expressly determining that a certain proposed use is public as does our own here.

Under authorities already cited we cannot condemn the statutory determination of public use here unless it is plainly and palpably of a private character. We do not consider it to be such. Quite to the contrary we think the legislation sound and the use it authorizes clearly public in the true sense. A spur track is just as truly a part of the railroad as is the main line itself whether it serves one industry or a dozen. The public character of the service rendered by it is not dependent on the number of industries it furnishes access to. Most spur tracks are necessarily limited in that respect.

We must assume, in favor of constitutionality, that the statute contemplates and that there is contemplated here, not a private siding controlled by the industry, but a spur track constituting a part of the railroad system and under the railroad com-

pany's control. Phillips v. Watson, 63 Iowa 28, 32, 18 N.W. 659. The language amply supports such assumption. So considered we think no charge of unconstitutionality can be sustained.

V. While the trial court did not pass on the question of necessity we must meet it by reason of our disagreement with the trial court's decision on the constitutional issue. Plaintiffs, by pleading and in argument, insisted the commission erred in granting defendant a certificate of necessity. They sought a judicial review de novo on that issue.

The legislature has clearly delegated to the commission the power to determine the question of necessity. Code sections 481.3, 471.10. The power so to delegate is unquestioned. Jager v. Dey, 80 Iowa 23, 45 N.W. 391; Eikenberry v. St. Paul & Kansas City Shortline R. Co., 174 Iowa 6, 12, 156 N.W. 163; 18 Am. Jur., Eminent Domain, section 106; 29 C. J. S., Eminent Domain, sections 87, 89b.

. We find no statutory provision for any appeal from the decision of the commerce commission in ordering or refusing to order a certificate of necessity under these statutes. The question is primarily legislative. Doubtless, however, certiorari would lie to question whether the commission exceeded its authority or otherwise acted illegally, notwithstanding our rule 306, R. C. P., now limits such remedy to inferior boards or tribunals "exercising judicial functions." Massey v. City Council, 239 Iowa 527, 530–533, 31 N.W.2d 875. The act of the commerce commission in such case is certainly quasi judicial. We need not explore that procedural probability however since plaintiffs have made no attack by either appeal or certiorari.

Waiving any technical question of procedure we think there is in this record no showing the commission acted illegally or exceeded its jurisdiction or abused its discretion. 73 C. J. S., Public Administrative Bodies and Procedure, sections 216–218. The one consideration strenuously urged by plaintiffs is the one already discussed, viz., that it clearly appears the proposed new track is for the sole accommodation of but one industry and can never, because of its surroundings, be of any service to any other. That contention relates to the question of public use and has been determined by the legislature adversely to plaintiffs. What-

ever may be the position of other courts and other statutes, we deem our legislation in that respect constitutional and broad enough to cover the situation shown here. And since the proposed *use* is public the commerce commission here did not abuse its discretion in its finding of the existence of public *necessity*.

We agree with the excellent statement of the trial court at this point: "It is the general rule that where the intended *use* of property sought to be taken by condemnation is public, the *necessity* and *expediency* of the taking may be determined by the public body or agency, in this case the State Commerce Commission, and in such mode as the State may designate, and under such circumstances the courts will not inquire into the necessity or propriety of the taking." (Italics supplied.)

The commission, in a case such as this, sits as an impartial tribunal to pass on the question of necessity. It does not originate the proposed plan but acts as umpire to safeguard the interests of all parties affected, including the public. Its action is judicial in character. The case of Havner v. Iowa State Highway Comm., 230 Iowa 1069, 300 N.W. 287 (cited by plaintiff) involved the decision of an administrative body engaged in carrying out a plan initiated by itself. While this does not change the rule governing us in reviewing the action, the interest of the commission is a circumstance to be considered in determining whether it has abused its discretion.

But the Havner case is not authority for a rule permitting a review de novo on appeal on the issue of public necessity. Porter v. Iowa State Highway Comm., 241 Iowa 1208, 1217, 44 N.W.2d 682. The last cited case practically limits the effect of the Havner decision to "the exceptional case" where the authority and power of the commission "has been abused." See Bennett v. City of Marion, 106 Iowa 628, 632, 633, 76 N.W. 844.

Our decisions in cases where statutory appeal from the commission's rulings is provided are persuasive here. Even in those decisions we have consistently held the question of convenience and necessity is legislative, not judicial, and that upon appeal the court considers only judicial questions—whether the commission has exceeded its jurisdiction, whether the questioned order is without support in the record or is wholly arbitrary and unreasonable. See e.g., In re Application of Illinois Cent. R. Co.,

241 Iowa 333, 337, 41 N.W.2d 98; In re Application of National Freight Lines, 241 Iowa 179, 186, 40 N.W.2d 612, and cases therein cited.

The general rule is thus stated in 73 C. J. S., Public Administrative Bodies and Procedure, section 216a: "In the absence of fraud, lack of jurisdiction, or arbitrary or capricious action, an administrative agency's finding of fact is to be accepted as final, binding, and conclusive, and is not to be reviewed by a court except to the extent that a constitutional or statutory provision makes the finding reviewable by a court." See also discussion in 42 Am. Jur., Public Administrative Law, section 209.

We think the finding of the commerce commission here on the question of necessity had adequate support and that there are no legal grounds for setting it aside.

VI.   Plaintiffs have cross-appealed from the denial of their claim for attorney fees made under Code section 472.33 which provides: "The applicant [defendant here] shall pay all costs occasioned by the appeal, including reasonable attorney fees to be taxed by the court, unless on the trial thereof the same or a less amount of damages is awarded than was allowed by the tribunal from which the appeal was taken." The "appeal" referred to is of course the one allowed by Code section 472.18 from the "assessment"—the appeal to the district court.

Manifestly the attorney fee contemplated by these statutes cannot be fixed now since it is not yet known whether plaintiffs will be awarded an increased amount of damage when that issue is tried under Count II of their petition.

We agree with the trial court's conclusion they are not and will not be entitled to attorney fees for services rendered on trial under their Count I. It involves the question of the constitutionality of the Code sections and the legality of the action of the commerce commission, not the sufficiency of the condemnation award.

Count I of the petition is in the nature of certiorari rather than of appeal. Had plaintiffs waived the question of the sufficiency of the award and relied upon the matters urged in their Count I the issues would have been triable in certiorari. Runner v. City of Keokuk, 11 Iowa 543; Abney v. Clark, 87 Iowa 727, 731, 55 N.W. 6. This is not meant as a suggestion that the

issues presented by Count I were not properly triable in the manner adopted here. We need not and do not decide that question, but see Stough v. Chicago & N.W. Ry. Co., 71 Iowa 641, 643, 33 N.W. 149. However the statement does emphasize that the issues presented by Count I are not logically a part of the appeal from the award but essentially constitute a separate proceeding.

It is axiomatic thát attorney fees are not awarded as part of the costs unless clearly authorized by statute. Wilson v. Fleming, 239 Iowa 918, 32 N.W.2d 798; Wormely v. Mason City & Ft. D. Ry. Co., 120 Iowa 684, 95 N.W. 203.

We think the trial court's decision on this point must be upheld.

We have not followed the order of presentation adopted by the briefs, nor have we expressly decided every procedural contention presented. What we have said however disposes of every issue necessary to a complete determination on its merits of the appeal to this court without regard to procedural technicalities. It results that the case must be reversed on defendant's and affirmed on plaintiffs' appeal and remanded for trial on Count II of plaintiffs' second amended and substituted recast petition.—Reversed on defendant's appeal; affirmed on plaintiffs' appeal.

MULRONEY, C. J., and BLISS, OLIVER, GARFIELD, MANTZ, and THOMPSON, JJ., concur.

WENNERSTRUM and HAYS, JJ., dissent.

WENNERSTRUM, J. (dissenting)—I am unable to agree with all of the conclusions expressed in the majority opinion and consequently respectfully dissent.

In order that the situation may be better understood a more detailed factual statement relative to the affected property and a brief summary of some of the evidence presented are hereinafter set forth.

The tract involved is approximately 1200 feet in length. It is approximately 200 feet in width at the southwest boundary thereof and approximately 50 feet in width at its northeasterly end. The tract, except on the slough side of the property and a street frontage at the northeast end, is surrounded by property of the Clinton Foods, Inc. The plaintiffs now have a railroad

siding for their own use on or adjacent to the street frontage of their property and have no need for additional trackage. The small size of the tract does not justify its industrial development except on the part of the Clinton Foods, Inc. and, to a limited extent, by the plaintiffs.

The Clinton plant of the Clinton Foods, Inc. is an extensive one and the corporation has erected additional buildings as its business has increased. This company is engaged at its Clinton location in the processing of food products from corn and soybeans. This plant is located on the southeasterly side of the trackage of the Chicago & North Western Railway Company and also that of the defendant, Davenport, Rock Island and North Western Railway Company. Both of these railroads now have trackage into the plant grounds. This property extends southeasterly with an average width of approximately 500 feet to the Beaver Slough branch of the river. It extends approximately 4500 feet southwesterly and northeasterly. The southwesterly portion is largely occupied with a factory and buildings and railroad tracks.

Prior to the institution of the proceeding before the Iowa State Commerce Commission, the Clinton Foods, Inc. or its predecessor contemplated the removal of some of its existing buildings, the erection of new buildings and the relocation of the railroad trackage upon its property in order to more effectively and efficiently handle the switching of cars. A survey and study of the plant was made by a firm of engineers and its recommendations were introduced in evidence before the commerce commission. This report shows that commencing at a point approximately 235 feet south of the southerly boundary of plaintiffs' land are a group of the Clinton Food Company's buildings. They are now or were served by a spur track which extends northeasterly to a point approximately 35 or 40 feet from the southeasterly corner of plaintiffs' land. This original spur track connects with the track of the defendant railway company by a switch track running northeasterly in a reverse curve. It was recommended in the engineers' report that a large storage warehouse be constructed immediately south of plaintiffs' land and adjacent to the original spur track. It was also recommended that this spur track be extended northeasterly through plaintiffs' land and connected with the main track of the defendant rail-

way company. The original application before the commerce commission sought a strip of land 60 feet in width in order that two tracks might be provided, one of which might be used for storage of freight cars. However, the commerce commission only authorized the condemnation of a strip 30 feet in width. In the hearing in the district court the transcript of the evidence heard by the commerce commission was introduced, together with all exhibits. In the district court the plaintiffs called certain witnesses who testified on the question of the necessity for the construction of the track through plaintiffs' property. Testimony and exhibits were also presented by the railroad company.

I. The writer of this dissent is unable to agree with the conclusion reached by the majority relative to the effect of the finding of the Iowa State Commerce Commission and its authorization to permit condemnation. Permission of the commerce commission is a prerequisite before a condemnation proceeding may be initiated in a situation such as is here presented. Sections 471.9,[1] 471.10,[2] 1946 Code. It may be true that the legislature has delegated to the commission the right to determine the question of necessity, but I am unable to conclude that the commission's order is a finality. A reading of the authorities cited by the majority does not, in this writer's opinion, justify the statement that "the power to so delegate is unquestioned." The case of Jager v. Dey, 80 Iowa 23, 45 N.W. 391, does not so hold. Neither can I so interpret the case of Eikenberry v. St. Paul & Kansas City Shortline R. Co., 174 Iowa 6, 12, 156 N.W. 163. See also Crandall v. The Des Moines, Northern & Western R. Co., 103 Iowa 684, 688, 689, 72 N.W. 778.

It is my conclusion that where it is provided in section 471.10, 1946 Code, that upon obtaining permission to condemn land for the purposes set out in section 471.9, 1946 Code, the "* * * company shall have power to condemn the lands so certified

---

[1]471.9 Additional purposes. Any such corporation owning, operating, or constructing a railway may, by condemnation or otherwise, acquire lands for the following additional purposes: * * *
2. For the purpose of constructing a track or tracks to any mine, quarry, gravel pit, manufactory, warehouse, or mercantile establishment. * * *.
[2]471.10 Finding by commerce commission. The company, before instituting condemnation proceedings under section 471.9, shall apply in writing to the Iowa state commerce commission, for permission to so condemn. Said commission shall give notice to the landowner, and examine into the matter, and report by certificate to the clerk of the district court in the county in which the land is situated, the amount and description of the additional lands necessary for such purposes, present and prospective, of such company; whereupon the company shall have power to condemn the lands so certified by the commission.

by the commission", and the statute does nothing more than authorize the right to proceed by condemnation.

I likewise am unable to give to the citations referred to in the majority opinion, to wit: 18 Am. Jur., Eminent Domain, section 106, and 29 C. J. S., Eminent Domain, sections 87, 89b, the import that it seeks to give. If I understand the authorities referred to they have in mind the grantee of a power to condemn such as a railroad or a municipality rather than a fact-finding board. I have not found any authorities where it has been held that the decision of a preliminary fact-finding body such as a commerce commission is a finality. The authorities that have commented on a preliminary ruling such as was issued in this case hold that they are not even conclusive.

In the case of Limits Industrial R. Co. v. American Spiral Pipe Works, 321 Ill. 101, 106, 107, 151 N. E. 567, 569, there is a holding limiting the effect of a ruling of the commerce commission of that state. It is therein stated:

*"The findings of the Commerce Commission, its certificate of convenience and necessity and its approval of the issue of the capital stock of the railroad company are therefore in no way conclusive, and the question whether the proposed use was public or not was open for the consideration of the court on the motion to dismiss the petition.* [Italics supplied.] * * *

"Clearly, a railroad company cannot condemn private property for a spur track for the purpose of connecting a particular plant or industry, or a small group of such, with the main line of its road for the private benefit of the plant or industry and of the railroad company. Such a use would not be a public use of the property but a private use for the private profit of the plants or industries affected and of the railroad company. Sanitary District v. Corneau, 257 Ill. 93, 100 N. E. 517; Pittsburg, W. & K. R. Co. v. Benwood Iron Works, 31 W. Va. 710, 8 S. E. 453, 2 L. R. A. 680; Gauley & S. R. Co. v. Vencill, 73 W. Va. 650, 80 S. E. 1103; Kyle v. Texas & N. O. Ry. Co., 3 Willson, Civ. Cas. Ct. App. (Tex.) 518, §436; People v. Pittsburgh R. Co., 53 Cal. 694. The use that will justify the taking of private property by the power of eminent domain is the use by or for the government, the general public or some portion of it, and not the use by or

for particular individuals or for the benefit of certain estates. The use may be limited to the inhabitants of a small locality, but the benefit must be in common and not to a very few persons or estates. McQuillen v. Hatton, 42 Ohio St. 202; Coster v. Tide Water Co., 18 N. J. Eq. 54; Talbot v. Hudson, 16 Gray (Mass.) 417. If private property cannot be condemned directly for the purpose of a spur track reaching a particular industrial plant or tract, the proposition can scarcely require argument to support it that the law will not permit this identical thing to be accomplished indirectly by the subterfuge of organizing a railroad company for the ostensible purpose of constructing and operating a railroad between the railroad already existing and the plant."

For a holding to the same effect as in the last quoted case see Interstate Water Co. v. Adkins, 327 Ill. 356, 158 N. E. 685.

II. Inasmuch as the question of the effectiveness and conclusiveness of the decision of the commerce commission has been raised in the majority opinion I deem it necessary to comment on the position taken by the railway company, as well as that expressed by the majority. The Iowa authorities cited by the majority in support of its contention are cases which concern the issuance by the commerce commission of certificates of convenience for motor carrier service. In re Application of Illinois Central R. Co., 241 Iowa 333, 336, 41 N.W.2d 98; Burlington Transportation Co. v. Iowa State Commerce Comm., 230 Iowa 570, 577, 298 N.W. 631; In re Application of Waterloo, C. F. & N. Ry. Co., 206 Iowa 238, 241, 220 N.W. 310; In re Appeal of Beasley Bros., 206 Iowa 229, 237, 220 N.W. 306. There is a particular statute applicable in motor carrier appeal cases. Section 325.23, 1946 Code. It is there provided: "The appeal shall be submitted upon the transcript of the evidence and the record made before the commission and the district court shall either affirm or reverse the order of the commission." The cases last-cited and from which the railway company claims support are not in point because of the applicable appeal statute.

In sections 472.35, 472.36, 472.37 and 472.38, 1946 Code, there are set out general provisions relative to a condemnation proceeding and the necessary papers required to be filed. In section 471.10, 1946 Code, which relates to the findings of the commerce

commission, no provision or direction is set forth requiring the filing of a transcript of the proceedings before the commission as is required in appeals relative to the issuance of certificates of convenience in motor carrier cases. The filing of the commission's certificate with the clerk of the district court merely authorizes the condemnation. If the legislature had intended to restrict the matter of appeal in railroad condemnation cases provided for in sections 471.9, 471.10 and 481.3, 1946 Code to the record made in the hearing before the commerce commission, it would have so limited the matters to be considered on appeal as it did in the matter of the issuance of certificates of convenience for motor carriers. It has not done so and it has not stated that the ruling of the commission is a finality.

III. It is my conclusion that this court can and should review de novo the matters pertaining to the necessity of and the justification for the condemnation.

It is disclosed by the record that at the commencement of the hearing the trial court stated that the cause would be heard as in an equity action. Consequently it is my conclusion that all legal and factual questions were properly considered in the district court and can and should now be determined on this appeal. This is true regardless of the fact that in the hearing held on August 14 and 15, 1950, the matters, in part, then considered were the determination of certain legal questions raised by the defendant on its motion presented under rule 105, R. C. P. These questions are the same that must necessarily be determined in a disposition of the case if considered as an equity proceeding.

As bearing upon the apparent attitude of the trial court in disposing of these matters, it should be related that following the submission of them the court filed on December 21, 1950, findings of fact and conclusions of law. Thereafter on January 29, 1951, the trial court filed what it designated, "Final Decree." In the findings of fact and conclusions of law, as well as in the decree, the court sought and did make disposition of all the questions presented, both legal and factual.

In the light of the procedure followed, the ruling of the court, and the manner of the final disposition of the proceedings before the trial court it is my conclusion that this court can and

should review this case de novo on the factual and legal questions presented whether in connection with a ruling on the motion developed by the application of rule 105, R. C. P. or in connection with the submission of the cause as an action in equity.

IV. The determination of the question whether the condemnation of the land sought to be obtained was for "public use" or not can only be reached by a review of the facts as well as the pleadings. In the first place, it is shown that the Clinton Industries, Inc., now Clinton Foods, Inc., joined with the defendant railway company in the application made to the Iowa State Commerce Commission. This fact should not be held to be prejudicial to the present contentions of the railway company. However, the facts hereinafter set forth disclose the real purpose of the condemnation. In the hearing before the commission it is shown by the testimony and exhibits that the proposed new track was desired by reason of a contemplated rearrangement of switch tracks within the plant grounds because of the contemplated erection of new buildings and the general expansion of the plant.

It is shown by the transcript of the evidence presented before the commerce commission that one of the officials of the railway company testified in that hearing that it was true "* * * there would be no other customer of the railroad that would get any benefit or use of it except the Clinton Industries, Inc.", and he also stated that it was true that the new trackage was being proposed exclusively for the use and purpose of the corporation. The trial court in its conclusions of law very aptly stated:

"Obviously, the proposed construction of the spur track through plaintiffs' property, thereby giving a direct connection from the defendant's main line to the existing storage track along the soybean storage and other buildings then on the industry's property, as well as access to the proposed new warehouse, would constitute a great convenience and benefit to Clinton Industries, but Clinton Industries, being a corporation organized for private profit, does not have the right of condemnation, and its needs or convenience, no matter how urgent, could never confer upon it the right to take private property without the consent of the owner. How, then, can it be said that any public use is involved

in this taking, unless it be held that the taking of property by a railroad corporation for the purpose of laying a track is in itself sufficient evidence of the public nature of the use to which it is proposed to be put? This certainly is not the law. The mere fact that the condemnation proceedings were initiated by the railroad company for the purpose of relieving the necessities of the private corporation will not make such taking one for public use."

It is quite apparent to me, that there has been no showing of public use by virtue of the taking of the plaintiffs' land. Any public use that might be inferred by reason of the transportation of freight can be obtained by the other trackage into the plant. I am abidingly convinced that the trial court was correct in holding that the taking of the land was for a private and not a public use and as expressed by it, "* * * in contravention of the constitutional provisions relating to the exercise of the power of eminent domain * * *." This conclusion is supported by our early case of Noll v. Dubuque B. & M. R. Co., 32 Iowa 66, 70, and many subsequent decisions of this court.

I have read and studied the several cases cited by the defendant railway company and referred to in the majority opinion. Under the particular facts in this case and the applicable law, they do not seem to me to be controlling. I have given particular consideration to the case of Chicago & N. W. Ry. Co. v. Ochs, 249 U. S. 416, 419, 39 S. Ct. 343, 63 L. Ed. 679, 682, where the growth and development of an enterprise necessitated the enlargement of the plant and the extension of an existing siding. This case is cited as an authority by the majority. In this case the question considered by the court was whether the railroad company should be required to pay the cost of the extended siding. There was not involved the condemnation for additional trackage. I have also given consideration to the case of Union Lime Co. v. Chicago & N. W. Ry. Co., 233 U. S. 211, 34 S. Ct. 522, 58 L. Ed. 924, cited in the majority opinion. This case involved an order of the railroad commission of Wisconsin relative to the extension of an existing spur. In my opinion these holdings of the United States Supreme Court are not applicable to the present case.

In the case of Cleveland, C., C. & St. L. Ry. Co. v. Commerce Comm. ex rel. Dering Coal Co., 315 Ill. 461, 475, 146 N. E. 606, 612, 54 A. L. R. 45, 54, 55, the following statement is made which seems particularly applicable:

"The purpose of section 5 is to afford a coal mine, warehouse or other shipper reasonable facilities for shipping and is not intended to apply to cases where such facilities already exist. * * * No cases have been cited, and we know of none, holding that a coal mine already having shipping facilities may by authority of this section compel a connection with a second railroad not adjacent to such mine, where to do so would, as in this case, connect two or more railroads and amount to an extension of them. We are of the opinion that section 5 was not intended to apply to such a case."

Inasmuch as it is shown that the railway company already has access to the plant of the Clinton Foods, Inc., the cases cited by the majority do not seem applicable.

V. The annotator in 22 L. R. A. (N. S.) 130 has set forth the basic guides in determining whether a railroad spur track will or will not be for a public use, as follows:

"The decisive tests as to whether a branch, spur, or side track from the main line of a railway to a private mine, quarry, or factory is to be constructed for public or private purposes, deducible from the great weight of authority in the United States, according to the court in Ulmer v. Lime Rock R. Co., supra [98 Me. 579, 57 A. 1001, 66 L. R. A. 387], are these: If the track is to be open to the public, to be used upon equal terms by all who may at any time have occasion to use it, so that all persons who have occasion to do so can demand that they be served without discrimination, not merely by permission, but of right, and if the track is subject to governmental control, under general laws, as are the main lines, then the use is a public one, and the legislature may grant the power to exercise the right of eminent domain to a railroad corporation to construct, maintain, and operate such track; and, if the purpose of the railroad corporation in building any particular branch track is to operate it in

conformity with these requirements, then the power granted by the legislature may be exercised in that particular case.

"The right of eminent domain may lawfully be exercised in behalf of a railroad corporation to acquire land for a switch or spur railroad track leading to private manufacturing establishments, and intended primarily to accommodate their freights, provided the whole public will have an equal right to the use thereof when completed, and so far as it may have occasion to use such track. Chicago, B. & N. R. Co. v. Porter, 43 Minn. 527, 46 N.W. 75."

It seems to me that it will take an extreme interpretation of the foregoing tests to bring them within the situation here presented. In the first place, shippers to the plant have no assurance that their car will go into the plant over the contemplated trackage. One shipper might have his car enter the plant over the original route of the defendant railway company and another over the new route or over the tracks of the North Western line. The route used would depend on the wishes of the consignee, the Clinton Foods, Inc. In that sense it would be permissive. It is shown by the evidence that the contemplated track will serve storage buildings and consequently will serve either the products brought in or those taken out. If it will serve buildings where the finished products are handled it will not be used for bringing in corn or soybeans. If that is the case it is quite apparent that the track will not be so used that a shipper will have any equal rights in determining how he wants his car to enter the plant of the Clinton Foods, Inc.

VI. It appears that the only basis on which the proposed condemnation can be justified is that the contemplated track will be for a public use. I cannot see how this conclusion can be reached. If we are to carry the holding of the majority opinion to its logical conclusion no property would be immune from condemnation regardless of the number of other existing switch and spur tracks into an industrial plant. This surely was not the intent of the statutes here under consideration.

I would affirm the decree of the trial court.

HAYS, J., joins in this dissent.